No. 23,780.

ANNA MESLOH, *Appellee,* v. THE LAFAYETTE LIFE INSURANCE
COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

LIFE INSURANCE—*Terms of Policy—No Liability Until First Premium was
Paid—First Premium Not Paid.* The pleadings, a stipulation relating to
certain facts, and the opening statements of counsel, in an action to recover
on a contract for life insurance, examined, and *held,* a condition of the
application that the company should incur no liability until the first annual
premium was paid, was not complied with, and the company did nothing to
waive the condition.

Appeal from Republic district court; JOHN C. HOGIN, judge. Opinion filed
June 10, 1922. Reversed.

*Robert Stone, George T. McDermott, Robert L. Webb,* all of Topeka, *W. D.
Vance,* and *R. E. McTaggart,* both of Belleville, for the appellant.

*E. S. Nelson,* and *N. J. Ward,* both of Belleville, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a contract for life
insurance applied for by Herman Mesloh. The plaintiff moved for
judgment on the pleadings, a stipulation relating to certain facts,
and the opening statement of counsel for the defendant. The de-
fendant moved for judgment on the pleadings, the stipulation, and
the opening statement of counsel for the plaintiff. The motion of
the defendant was denied, the motion of the plaintiff was allowed,
judgment was rendered accordingly, and the defendant appeals.

Fred Fleer, a soliciting agent of the company, took Mesloh's
application. The application was subsequently approved, and the
policy was written. The policy was sent to a state agent of the com-
pany, and by him to Fleer, for delivery, but before it was delivered
Mesloh died. The application signed by Mesloh was dated Septem-
ber 1, 1918, and contained the following provision:

"I hereby agree . . . that the company shall incur no liability until
this application has been approved by it at its home office, the policy delivered
during my good health, and the first annual premium thereon shall have been
paid by me: *Provided,* That if the first annual premium be paid at the time
of making this application, the insurance shall be in force from the date of
the approval of the application by the company at the home office."

The application also contained the following statement by Mesloh: "I have paid the first premium of $108.85 to Mr. Fred Fleer."

The petition stated that the first annual premium was paid and satisfied at the time the application was signed, but that the plaintiff was unable to state how. The payment was either in cash, or by agreement to pay at some later date. The plaintiff was unable to state whether the agreement was oral or in writing, but if a promise was given in settlement and payment of the premium, the time when such promise required payment in cash was January 1, 1919. The opening statement of counsel for plaintiff did not clarify the matter of payment. With the jury in the box, and the burden resting on the plaintiff to proceed with the production of evidence of payment, counsel was unable to specify what his evidence would be, and said:

"I think the evidence will show it was either done by note or by cash or by some oral arrangement, the evidence will show just exactly the method, but I think the evidence will show clearly that the first annual premium was actually settled in some way on the date the application was taken, . . ."

The defendant's answer undertook to state the facts:

"The defendant alleges that it is informed and believes, and therefore alleges the fact to be, that at the time such application was taken, and after the same had been filled out and signed, the said Herman Mesloh told the said Fleer that he was unable to pay the premium at that time, but that it would be necessary for him to first sell property belonging to him, and realize the money necessary therefor. That thereupon it was agreed that the said Mesloh would raise the money necessary and would send the same to one Brettman, a relative of the said Mesloh, and that the said Fleer would deliver the policy, when it came, to the said Brettman, who would have the money therefor. That such arrangement was satisfactory to the said Fleer, and the application was sent to the company. The defendant alleges that the said Mesloh did not send such money to the said Brettman, or any part thereof, and that on that account the said policy was never delivered to the said Mesloh, or to Brettman, or to any one else."

The facts were amplified in the opening statement for the defendant:

"Now, gentlemen, there is no doubt in the world but what the evidence will show exactly what happened at the time this application was taken.

"There were only three persons present, Fred Fleer, Mr. Brettman, a cousin of Herman Mesloh's, and Herman Mesloh, who is now dead.

"Now the arrangement that was made, as the evidence will substantiate to you, is simply this: Mr. Fleer, after they had agreed upon the amount of insurance, filled out the application for insurance, and filled out all blanks, . assuming that Mr. Mesloh would pay him for the insurance, which is the hope of all agents, that a man will pay for his insurance at the time they

Mesloh v. Insurance Co.

write the application, and he filled out the blank that 'I have paid the first premium of $107.85 to Mr. Fred Fleer.' And Mr. Mesloh, in signing the application, said to him, 'I cannot pay the first premium, I have got to sell some stock before I can pay the money.' If he had been able to pay the money at that time, the company has, and Mr. Fleer had, a receipt which the company calls a binding receipt, to be given to Mr. Mesloh if he paid the first premium, in which receipt it is stated that, the applicant having paid the first annual premium, this insurance will be effective from the time your application is approved by the home office. But Mr. Mesloh said he did not want to pay the premium at that time, and the arrangement made was this: Mr. Herman Mesloh said, 'I will have to sell some stock, I am going in the army,' I think he said shortly or the next day, 'and I will send the money, after I sell my stock, up to Mr. Brettman,' who was his cousin and lived up in or near Deshler, Nebraska. And that arrangement was made, and Mr. Fleer was to deliver the policy to Mr. Brettman and get the money at the time the policy was delivered; that was the arrangement.

"Now the policy got to Mr. Worth, who was state agent, living at St. Joe, Mo., along around the 22nd, 23d, or 24th of September. Mr. Fleer was out on the road at the time, and by the time Mr. Worth could get the policy to Mr. Fleer, and Mr. Fleer down to Deshler, Mr. Herman Mesloh was dead. I think he died the 5th of October.

"Mr. Fleer inquired of Mr. Brettman, who said no money or anything else had ever been paid to him on account of the policy. Now there is the case. It was simply where a man had applied for insurance, and never completed the transaction by paying his premium, . . . "

The court held the defendant was bound up to the time it discovered it could not get the money from Brettman, and rendered judgment for the face of the policy, with interest, less the unpaid first annual premium, with interest.

The district court erred. The applicant agreed the company should be under no liability until the first annual premium was paid, and the first annual premium was not paid.

For present purposes it may be conceded Fleer had all the authority the board of directors of the company would have possessed if it had been dealing directly with the applicant. The applicant entered into an arrangement respecting payment of the premium, which was perfectly satisfactory to Fleer, and, under the concession, to the company. The arrangement was partly oral and partly in writing, and was to this effect: The applicant was to obtain money with which to pay; payment was to be made in money when the policy was delivered to Brettman; meanwhile, there should be no liability on the part of the company. It is elementary law in this state that there could be no payment unless what was done extinguished all right of the company to collect premium for the

first year, and rendered all obligation of the applicant to pay premium for the first year nonexistent. Plainly, nothing of the kind occurred. Payment was not made, and neither time of payment nor credit was extended. The oral arrangement was consistent in every detail with the written agreement, and liability waited on the sale of the applicant's stock, the placing of the proceeds of sale in the hands of Brettman, and Brettman's payment of the premium in cash at the time the policy was delivered to him.

The plaintiff contends the defendant is concluded by the statement in the application, "I have paid the first premium of $108.85 to Mr. Fred Fleer." In support of the contention, the plaintiff cites the case of *Harrington v. Mutual L. Ins. Co.*, 21 N. D. 447. The decision in that case was rested on a statute of the state of North Dakota, making acknowledgment of receipt of premium conclusive evidence of payment of premium, notwithstanding a stipulation liability should not attach until actual payment. The court took occasion to cite the case of *Basch v. Humboldt Mut. F. & M. Ins. Co.*, 35 N. J. L. 429, in which the New Jersey court, without a statute, held in accordance with the North Dakota statute. The ground of the decision in the New Jersey case is interesting. The court said:

"Such an acknowledgment appears to be analogous, and equivalent to the acknowledgment of the receipt of a valuable consideration in a conveyance operative by force of the statute of uses, such acknowledgment being always considered conclusive for the purpose of giving a legal force to the transaction." (p. 431.)

This court prefers to find legal force, if there be any, in the facts of a given transaction, rather than in a fiction useful in administering the law of Henry VIII, and in making search for legal efficiency, receipts do not count for much as against the truth. They do not even shift the burden of proving payment. (*Bridge Co. v. Wayland,* 107 Kan. 532, 192 Pac. 752.) In this instance, however, no receipt was given. Fleer had with him, when the application was taken, receipts which, if one had been issued, would have given the applicant insurance from the date his application was approved. Those receipts, however, were for payment of premium, and the applicant lacked money with which to qualify himself to receive one. The statement in the application was merely Mesloh's own self-serving representation, and was not true. It has been decided many times that an application which does not truthfully state the agreement between applicant and soliciting agent, does

not bind the applicant; the actual agreement controls. The sauce has equal piquancy for the insurer. The actual arrangement between Fleer and Mesloh controls, and, under that arrangement, payment of premium was to accompany delivery of the policy.

The plaintiff asserts that delivery of the policy to Fleer with unconditional instruction to deliver it to Mesloh, made a contract of insurance. The policy was not delivered to Fleer, in the sense that anything was effectuated between the company and the applicant. Sending the policy to Fleer merely amounted to passing it from one hand of the company to another, from a general agent at the home office, to a special agent in the field. Fleer was not agent of the applicant to receive the policy, and the policy remained in the custody and control of the company, undelivered to anybody, so far as the applicant was concerned.

The plaintiff pleaded the instruction to Fleer, which read as follows: "We are inclosing policy No. 15,776 for Herman Mesloh for delivery, . . . " This letter was not an unconditional instruction to deliver, much less an instruction to deliver under such circumstances as to nullify an express condition of the document to be delivered. The policy was simply placed in the hands of Fleer for the purpose of consummating the relation between the applicant and the company formed by acceptance of the application and by the oral arrangement with Fleer regarding payment of premium. Let it be assumed there was a contract relation between the applicant and the company when the policy was sent to Fleer. The application was incorporated in the policy, and the contract was, the company should incur no liability until the first annual premium was paid.

The plaintiff pleaded the arrangement between the company and Fleer for division of the first annual premium and the bookkeeping which followed acceptance of the application. Those matters were of no concern to the plaintiff, and were irrelevant to the subject of payment of premium by the applicant. (*Marshall v. Insurance Co.*, 98 Kan. 502, 159 Pac. 17.)

The plaintiff pleaded a letter from the company to Mesloh, congratulating him on his good judgment in selecting the company as his insurer, and referring to him as a policyholder. The letter followed approval of the application which contained Mesloh's false statement that he had paid the first annual premium, instead of the actual arrangement with Fleer.

In his opening statement to the jury, counsel for plaintiff related a conversation between Fleer and the applicant's brother, occurring after the application had been taken, in which Fleer said the premium had been settled and taken care of for the first year. The statement embodied a fair interpretation of the nature of the arrangement Fleer had with Mesloh and Brettman for payment of the premium, but the statement afforded no ground for assuming payment of premium as a condition to liability was waived, and in no event could the statement bind the company.

The result is, payment was not made, there is no basis on which to predicate waiver of payment or estoppel to deny liability, and the indispensable condition to liability on the part of the company was not complied with.

The plaintiff contends in her brief that, should the judgment of the district court be reversed, she should be allowed to submit the case to a jury. As the case stands, there is nothing to submit to a jury. The plaintiff speaks of an uncertainty respecting method of payment, which the jury should resolve. There is no uncertainty respecting method, because the facts disclose nothing resembling payment, and an inference of payment would be contrary to the law defining payment. Other suggestions regarding sending the case to a jury ignore the fact, which the plaintiff cannot be permitted to evade or minimize, that the applicant failed to perfect insurance.

In strictness, the petition failed to state a cause of action. None of the facts proposed for the purpose was sufficient to show waiver. While payment was alleged, the allegation was accompanied by a statement that the plaintiff did not know how payment was made. The allegation therefore reduces to a conclusion, accompanied by a confession that the plaintiff is not able to state facts on which to rest the conclusion, that is, facts stating a cause of action. The opening statement of counsel for plaintiff has been quoted. When counsel for the defendant had concluded his opening statement, the whole case was in fact before the court, and the court evidently regarded the motions for judgment as a final submission. In announcing its decision the court said:

"The plaintiff having asked judgment upon the pleadings, statements, and stipulation, and the defendant having asked the same relief, the court has considered them both together.

"It is apparent to the court that the parties have framed the pleadings and made the admissions for the purpose of having the matter settled in this

manner if possible, and while it is not perhaps a part of this lawsuit, I think it is very commendable on the part of counsel to endeavor to get together in that way, and shorten suits of this character, if they can. I certainly want to put on record my approval of that method of trying it."

The brief for the plaintiff contains no suggestion that, if the case were returned to the district court, any fact favorable to the plaintiff could be produced in addition to those which have already been discussed. Under these circumstances, the litigation ought to end.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.