No. 32,188

CECELIA L. WERTH, *Appellant,* v. THE MINNESOTA MUTUAL LIFE INSURANCE COMPANY, *Appellee.*

(47 P. 2d 76)

Opinion filed July 6, 1935.

*J. S. Simmons, Alva L. Fenn, Herbert E. Ramsey* and *Stuart Simmons,* all of Hutchinson, for the appellant.

*Roy C. Davis,* of Hutchinson, and *Henry I. Eager,* of Kansas City, Mo., for the appellee; *A. C. Malloy, R. C. Davis, Warren H. White,* all of Hutchinson, *Edwin C. Meservey, William C. Michaels, Charles M. Blackmar* and *Samuel D. Newkirk,* all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action against the defendant insur-

ance company for the amount claimed to be due the plaintiff, as beneficiary under a life insurance policy on the life of her son, with a double accidental death benefit rider attached. Payment was made of the face of the policy, but it is alleged she did not know at the time of the payment that the death of her son had resulted from an accident, but being so informed later brings this action within five years from the date of his death.

The answer is a general denial that the death of the insured was accidental and also pleads estoppel on account of the long lapse of time and a receipt in full.

The reply admits the receipt of the face of the policy in satisfaction of the ordinary death claim, but nothing else, and specifically denies the acceptance of the check and the giving of the receipt as constituting a settlement, compromise or release of her claim for additional payment for accidental death under the policy in question, or constituting an accord and satisfaction of such claim. And she further alleges that she signed such receipt under a misapprehension as to her rights in the policy and under a mistaken belief as to the facts of her son's death, and states that the defendant company has received proof as to the accidental death of her son.

At the close of the evidence the jury was instructed and brought in a verdict in favor of the defendant, from which judgment the plaintiff appealed after the overruling of her motion for a new trial. The errors assigned are principally with reference to the introduction of testimony and the giving of instructions.

The first error assigned was in overruling an objection of the plaintiff to a question asked in cross-examination of a doctor called by the plaintiff as an expert witness, concerning the attending physician, whose deposition had been taken and was on file and later read by the defendant. It is said the two doctors were close friends and had once officed together, although their opinions were widely different in this case. The question asked Doctor Butler in cross-examination about Doctor Greever, the physician who attended the deceased, was as follows: "You would respect his (Doctor Greever's) opinion if he handled the case, would you?" The objection was made that it was improper cross-examination. The objection was overruled and the witness answered, "Why, I certainly would, yes, sir."

In the case of *Sanders v. Railway Co.*, 86 Kan. 56, 119 Pac. 552, an expert witness was asked a similar question about an engineer

in charge of a locomotive that was charged to have been handled with negligence—the defendant asking its own witness about its own employee, and he answered such similar question that he considered him a first-class engineer, and the court in the consideration of that testimony said in the syllabus:

". . . without deciding upon the competency of the testimony under the issues presented it is held that it does not appear that the rulings, if erroneous, injuriously affected the substantial rights of the party objecting thereto, and that the judgment cannot be reversed therefor." (Syl. ¶ 3.)

In 28 R. C. L. 607 it is said concerning cross-examination in collateral matters that it is "one of the chief agencies for the development of the truth in judicial inquiries . . . Any question may be put which reasonably tends to explain, contradict, or discredit any testimony given by him, or to test his accuracy, memory, veracity, or credibility." And on page 609 it is said:

". . . an appellate court will not interfere with the exercise of discretion by the trial court unless a clear abuse thereof is made to appear. In order to warrant a reversal, it must plainly appear that the ruling has resulted to the prejudice of the exceptor."

While we would not want to say that the question asked was proper cross-examination, we have no hesitancy in concluding it was not an abuse of judicial discretion in overruling the objection thereto, and that such ruling did not constitute prejudicial error.

Two other errors assigned were the overruling of objections to the questions asked by the defendant of two of its witnesses, Mr. Ford, under whose supervision the insured was working at the time of the alleged injury, and the other physician who attended the insured during his illness, as to whether anything was said by the deceased about having received an accidental injury, and whether the deceased made any statement to Mr. Ford in regard to an accidental injury, and whether the deceased ever stated to the attending physician anything to the effect that the condition of the toe was caused by an accident or an external blow. Both answered these respective questions in the negative. The theory of the plaintiff was that the second toe on the right foot had been injured by being stepped on by another boy in a basketball game. Appellant frankly states that while the answers to these questions may not, strictly speaking, be hearsay evidence, yet inasmuch as they are preliminary in their nature and if the answers had been in the affirmative the statements made by the deceased would have been hearsay evidence, that such

preliminary questions were necessarily incompetent and improper. Appellant cites 1 C. J. 500 where the text is that declarations or statements of the insured as to the cause of his injury made some time after the event and not a part of the *res gestœ* cannot be admitted even though made to an attending physician. The preliminary questions and the answers thereto, either affirmative or negative, should not be controlled by the same rule as that which has to do with the statements made by the deceased. The fact that he mentioned or did not mention the accident or injury was some evidence on the main question of fact involved in this case, viz., Was there an accidental injury which resulted in the death of the insured? The fact that the deceased did mention the injury or did not mention it to the one under whom he was working or to his attending physician was certainly competent and material evidence on this issue of fact.

The third error assigned is in permitting Mr. Ford to answer a question of defendant's attorney as to "athlete's foot" being a common disease at a certain time among the companions of the deceased. We see no error in this question, because the issue was whether or not the death resulted from an accidental injury.

The errors assigned concerning the giving and refusing of instructions relate to the question of giving a receipt or release and the burden of proof upon the plaintiff to show a mistake in giving the same. Appellant calls attention in the reply brief to the language of the reply alleging that the receipt given by the plaintiff for the face of the policy was given by her because "she was under a misapprehension as to her rights in the policy and that she signed said receipt and accepted said check under a mistaken belief as to the facts of said death." The trial court instructed on the theory of mutual mistake, although no such allegation is in the reply. The case of *Clark v. Marbourg,* 33 Kan. 471, 6 Pac. 548, and some other cases are cited in support of appellant's theory that her mistake alone was sufficient to fully relieve her from the binding force of a receipt she gave. In other words, the defendant may have, at the time of making the payment of the face of the policy and the taking of the receipt of the beneficiary therefor, known all about the death having resulted from an accidental injury, which would have entitled her to double the amount. In most of such cases the action of the defendant company in concealing from her the fact of the death resulting from an accidental injury, if it were a fact, has

been denominated as fraudulent, and if the mistake was not mutual, it was generally alleged to have been fraudulent. (53 C. J. 1211-1213; and *Miller v. Gas & Fuel Co.*, 108 Kan. 124, 193 Pac. 896.) These references have to do with releases instead of receipts, between which there is a great distinction, which will be considered later, but as to the mistake being mutual, or only the mistake of one of the parties, the principle would seem to be the same with respect to a receipt as it is to a release. Regardless of the limited nature of the mistake alleged in the reply, the court tried the case throughout on the theory of a mutual mistake having been pleaded, and we find no objections made or entered as to such theory during the trial, and the following instruction requested by the plaintiff at the close of the trial puts the plaintiff on record as having intended to submit the question of mutual mistake to the jury:

"The jury is instructed that where a receipt for money is given and all parties concerned in the transaction are acting under a mistaken belief as to the facts surrounding said transaction that the receipt is not binding upon any of the parties thereto."

The plaintiff's evidence as to a mistake on her part does not seem to have been contradicted in the record, but it left the matter open for proof as to its being a mistake on the part of the defendant. The defendant in its answer denied the accidental injury alleged in the petition, and as honesty is always presumed, it would naturally be thought that the company was of the same view when the receipt was given to it as at the time of the trial, viz., that there was no knowledge on its part of an accidental injury, unless it was concealing some information it then had which might be the basis for fraudulent conduct in procuring a receipt, knowing it to have been the result of an accident, but fraud is not pleaded, neither is it to be presumed. So we have the necessity of some proof as to a mistake on the part of the defendant in order to meet the requirements of the instructions requested by plaintiff as well as those given by the court.

It is said in 53 C. J. 1211 that—

"A mere mistake of fact on the part of one of the parties to a release, in the absence of a showing of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release."

The same volume, at page 1196, gives the distinction between a receipt and a release, as follows:

"A release has been distinguished from a receipt as extinguishing a preëxist-

ing right, while a receipt is a mere evidence of a fact. As otherwise stated, a receipt is evidence that an obligation has been discharged, but a release is itself a discharge of it."

Under this definition the difference is partly in point of time, as a receipt introduced in evidence may become in effect a release. The plaintiff in this case consistently refers to the document along that line as a receipt. The trial court in its instructions mentioned it as a release. It consisted of two parts. The first part was on the back of the draft sent by the defendant to the plaintiff for the face or ordinary death value of the policy; the second was a separate instrument. They are as follows, omitting dates and signatures:

"Endorsed and accepted as payment in full of all claims under policy No. 163048 on the life of Louis J. Werth."

"Received from the Minnesota Mutual Life Insurance Company two thousand three and 58-00 dollars ($2,003.58), being in full settlement of all claims under policy No. 163048 issued by said company on the life of Louis J. Werth or of any policy in lieu of which said policy may have been issued; said policy being payable to Cecelia L. Werth, beneficiary, and not assigned.

| "Face of policy | $2,000.00 |
| Mortuary dividend | 3.58 |
| | $2,003.58" |

Appellant most earnestly objects to the burden of proof being placed on her by the instructions given as to there being a mutual mistake in the giving of a release and especially to the very strong language used and repeated therein to the effect that in order to set aside the release the evidence must be "clear, unequivocal and convincing that both parties were acting under such mutual mistake." As to the words used they are substantially the same in effect as were used in the instructions in the case of *Goodyear v. Davis*, 121 Kan. 392, 247 Pac. 446, as to a mutual mistake, and they were there approved.

As to the burden of proof being placed on the plaintiff concerning the mistake appellant cites *Bridge Co. v. Wayland*, 107 Kan. 532, 192 Pac. 752, holding where payment of a debt was alleged by defendant the burden of proof was on defendant to show the payment, and did not shift to the plaintiff who alleged a mistake in giving the receipt. In this case, however, the plaintiff's cause of action was to recover on an account or indebtedness. By pleading payment the defendant acknowledged the plaintiff's claim and the allegation of payment was for defendant to prove and establish. In

doing so it necessarily took issue with the plaintiff only as to the reply that the receipt was given by mistake. In the case at bar the real issue was on the allegation of the plaintiff that an accidental injury had occurred. The receipt or release pleaded by the defendant in no way admitted the plaintiff's cause of action, as it did in the Wayland case.

Appellant also cites *Mesloh v. Insurance Co.*, 111 Kan. 409, 207 Pac. 754, which was an insurance case in which the Wayland case was mentioned, and the court, in that connection, said in the opinion:

". . . receipts do not count for much as against the truth. They do not even shift the burden of proving payment. (*Bridge Co. v. Wayland,* 107 Kan. 532, 192 Pac. 752.) In this instance, however, no receipt was given." (p. 412.)

In the case at bar the plaintiff had two things to prove, (1) the accidental injury as the cause of the death and (2) the mistake in giving the receipt.

Appellant seriously complains of the remarks of the trial court to the jury shortly after the commencement of the trial in which it told the jury that—

". . . before you can consider the main case you will have to determine whether or not that release was given under a mistake of fact and that both parties were mistaken, in fact."

It is doubtless unusual to give such instructions during the progress of the trial, but it was in harmony with the instructions given later, and it can hardly be said to have been prejudicial.

The appellee pleads estoppel and argues that point in its brief and also argues the matter of the court overruling its demurrer to plaintiff's evidence, but there being no cross-appeal, these matters are not properly before us for review.

We do not find the errors assigned to be prejudicial.

The judgment is affirmed.

HARVEY, J. (dissenting): I feel compelled to say: In my judgment the court erred in instructing the jury it must find mutual mistake by such evidence as would require setting aside the release before it considered the question whether the insured's death was the result of an accidental injury within the meaning of the policy, for two reasons: (1) Whether the release should have been set aside was primarily a question for the court to determine rather than for the jury; and (2) it is in effect conceded in this case that there was a mutual mistake in the execution of the release if insured's

death in fact did result from an accidental injury. In that situation the court should have submitted to the jury the question whether the insured's death resulted from an accidental injury, within the meaning of the policy, and if the jury's verdict on that question was approved the court itself should have determined whether the release should have been set aside.