No. 37,600

ANNA PHYLLIS McMILLIN, *Appellant*, v. THE FARMERS & BANKERS LIFE INSURANCE COMPANY, *Appellee*.

(206 P. 2d 1061)

Opinion filed June 11, 1949.

*D. E. Watson,* of Salina, argued the cause and was on the brief for the appellant.

*Robert G. Braden,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems,* and *S. C. Durbin,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This is an action against the defendant insurance company for the amount claimed to be due plaintiff as beneficiary under a life insurance policy on the life of her husband with a double indemnity benefit rider attached. Payment was made on the face amount of the policy but it is alleged she did not know at the time of the payment and the giving of the receipt and release that the death of her husband had resulted from an accident, but being so informed later, brings this action to recover under the double indemnity provision.

The policy in question was taken out by the insured in 1932 in the face amount of $2,000 and the double indemnity rider provided for the payment of an additional $2,000 in the event death of the insured should occur as the result, and directly and independently of all other causes, of bodily injury effected through external, violent and accidental means, provided such death occur within ninety days after sustaining such injury and that on the date of death no premium be past due and unpaid.

The policy had been kept in force and the insured, Mark A. McMillin, died on February 28, 1946. Proof of death was duly made and on March 15, 1946, the company paid to plaintiff beneficiary the face amount of the policy in the sum of $2,000 and on the same date she gave the company her receipt and release which will hereinafter be referred to.

In her petition filed in this action she alleges the purchase of the insurance by her husband in 1932, makes reference to the double indemnity feature of the same and then alleges that on February 5, 1946, the insured suffered, directly and independently of all other causes, internal bodily injuries effected directly and through external, violent and accidental means, in that an aneurysm was caused in the aorta of deceased by trauma when he fell into a meter box while working on a water meter; that he overexerted himself in extricating

his body out of such meter box; that as a result of said accident and accidental injury he died on February 28, 1946; that such death was within ninety days after sustaining said bodily injury and that as of the date of injury and as of the date of death no premium on said double indemnity contract was past due; that the sum of $2,000 had been paid on the life insurance portion proper of the policy but that nothing had been paid on the double indemnity feature of the same and that there was due to her from defendant company the sum of $2,000 together with interest on said double indemnity contract. A copy of the double indemnity contract was attached to plaintiff's petition as an exhibit.

The answer of the defendant admits that it issued the policy in question, together with the double indemnity contract; admits the death of the insured on February 28, 1946, but specifically denies that his death was due in any part to any accidental cause whatsoever. Further answering, the defendant states that subsequent to the death of her husband plaintiff submitted a claim to defendant for payment of the sum of $2,000, that being the face amount of the policy in the event of death from natural causes; that plaintiff caused proof to be made to defendant that the death of the insured was due wholly and entirely to natural causes, and that she should now be estopped to deny the truth and accuracy of such claim. For further answer, defendant states that it made a complete settlement with plaintiff of all her rights under the policy, including all rights to double indemnity payment and that defendant was released and discharged by plaintiff from any and all liability and specifically by a receipt and release which was executed and delivered by plaintiff to the company on March 15, 1946. That all of the provisions of the policy with reference to double indemnity were an inseparable part of said policy and that all liability had been completely discharged and settled. A copy of the receipt and release was attached to the answer as an exhibit and is as follows:

"CLAIMANT'S RECEIPT AND RELEASE

"Received of The Farmers & Bankers Life Insurance Company, Wichita, Kansas, the sum of Two Thousand Two Hundred Two and 71/100 DOLLARS in full settlement of all claims of whatsoever nature under policy of Insurance No. 74627, issued 7-7-1932 to Mark A. McMillin of Salina, Kansas, by said Company, in consideration of which said Policy is hereby surrendered to said Company and said Company is hereby released from further liability thereunder.

"Signed at Salina, Kansas, this 15th day of March, 1946.

                               (SEAL)   Anna P. McMillin, Beneficiary

| | |
|---|---|
| "Face of Policy | $2,000.00 |
| Less Bal. 14th Ann. Prem | 19.12 |
| | 1,980.88 |
| Coupons & Int. | 202.71 |
| | 2,183.59 |
| Left on Deposit | 2,000.00 |
| Our check | $183.59 |

Witnessed By
Richard J. Surface."

Plaintiff filed her reply, and a motion to require her to make the sixth paragraph thereof more definite and certain as to when and in what manner plaintiff became aware of the alleged true facts concerning her husband's purported accidental death and as to when and in what manner plaintiff notified defendant company of the alleged true facts concerning the purported accidental death·of the insured was sustained.

Plaintiff's second amended reply admits the execution of the receipt and release above set forth but specifically denies that she submitted proof of loss to defendant company explicitly specifying that the death of her husband was due wholly and entirely to natural causes and she further specifically denies that a settlement had ever been had upon the double indemnity contract.

Since this case reaches us on appeal from the order of the lower court sustaining the defendant's demurrer to the second amended reply, the following pertinent portions of the same are set out in full:

"4. Plaintiff alleges that if her accepting payment in settlement for death due to natural causes was actually contracted for between plaintiff and defendant, and if such settlement and contract was intended as a full and complete settlement if death was due to other than natural cause, then each contract and settlement was based upon a mutual mistake of fact. Plaintiff further alleges that she concealed no facts concerning the accidental cause of the death of Mark A. McMillin from defendant; that all facts which were available to plaintiff causing the death of Mark A. McMillin were equally available to and ascertainable by defendant that the facts proving that death was accidental as alleged in plaintiff's Petition existed on March 8 and on March 15, 1946, but were unknown to this plaintiff until thereafter; that the fact of accidental death as alleged in plaintiff's petition instead of natural death was a mutual mistake of fact both by plaintiff and defendant.

"5. Plaintiff further alleges that at no time, or by any act, either written

or oral, has she explicitly cancelled, and released defendant of liability under the supplemental contract attached to her Petition as Exhibit 'A.'

"6. After plaintiff executed her release, which is Exhibit 'A' attached to defendant's Answer, she became aware of facts which prove that Mark A. McMillin suffered death due to accident as alleged in plaintiff's Petition, in the latter part of March, 1946; that she became aware of such facts when she began to clean house and care for the clothing of her deceased husband. It was then she observed more in detail that the coveralls worn by her deceased husband when he returned to his home in mid-morning on February 5, 1946, were severely torn and very muddy. She then remembered the remarks made by her husband at the home on said February 5, 1946, a few minutes after her husband suffered the accident from which he died, as alleged in her Petition. Prior to said latter part of March, plaintiff was upset, disturbed, and grief-stricken because of the serious illness of her husband, and gave no thought to plans for recovering money because of the same. All of her time was consumed in caring for her bed-fast and seriously ill husband. At no time, from the date of said accident until the day before the death of plaintiff's husband, was she apprehensive of his death, but on the contrary, she at all times expected his complete recovery; that in the latter part of March, she learned that:

"(1) Deceased, Mark A. McMillin, over exerted himself extremely in propelling and extricating his body out of the meter box into which he fell on said February 5, 1946, at 519 West Prescott in Salina, Kansas.

"(2) Such exertion so experienced by deceased, Mark A. McMillin, accidentally caused an aneurysm in the aorta of deceased, from which aneurysm he died;

"(3) Said aneurysm in the aorta of deceased, Mark A. McMillin, was caused accidentally by said exertion, and was not the result of natural causes or disease.

"that none of said facts were known to plaintiff or defendant on March 15, 1946, when plaintiff signed her release to defendant; that on March 15, 1946, plaintiff and defendant were under the mistaken belief that said aneurysm in the aorta of said deceased was the result of natural causes or was caused by disease; that on March 15, 1946, plaintiff and defendant did not know that in truth and in fact said aneurysm in the aorta of deceased, Mark A. McMillin, was caused by accident due to exertion on February 5, 1946, as alleged in plaintiff's petition.

"7. The plaintiff notified the defendant of the true facts of accidental death of Mark A. McMillin, and that Mark A. McMillin's death was caused by accident as alleged in plaintiff's Petition and as alleged in this said Second Amended Reply by letter from plaintiff's attorney, which letter is dated April 12, 1946, and is acknowledged by defendant by its letter dated April 15, 1946. . . ."

The demurrer is as follows:

"Comes now the defendant and demurs to the Second Amended Reply of the Plaintiff for the reason that it fails to state any grounds for relief from the admitted allegations of the Defendant's Answer, and for the reason that the Plaintiff's Petition and Reply together fail to state a cause of action against the Defendant."

This demurrer was sustained and plaintiff appeals from that ruling, and while five specifications of error are set out there is really only one question involved and that is whether or not plaintiff's petition and second amended reply state a cause of action against the defendant.

It will be seen that plaintiff bases her right to recover on the premise that the execution of the release was the result of a mutual mistake of fact, that is, mistake on both her part and that of the defendant company as to the true cause of death of the insured. Fraud is not pleaded and unless she can show such mutual mistake she cannot avoid the effect of the release.

"A mere mistake of fact on the part of one of the parties to a release, in the absence of a showing of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release." (53 C. J. 1211, Release, § 29.)

See, also, *Werth v. Minnesota Mutual Life Ins. Co.*, 142 Kan. 255, 47 P. 2d 76, where the factual situation was quite similar to the case at bar, in which it was held that the burden was upon the plaintiff to prove that the giving and acceptance of the receipt was a mutual mistake and that proof of mistake on the part of plaintiff alone is insufficient to meet the test.

The general rule with reference to mutuality of mistake as applied to cases of this nature is that to justify the rescission of a release such mutual mistake must be as to a past or present fact material to the contract and not a mere mistake in prophecy, opinion or in belief relative to an uncertain event such as probable developments from, and permanency of, a known injury. It is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by mistake as to a past or present fact material to such agreement. (*Tucker v. Atchison, T. & S. F. Rly. Co.*, 120 Kan. 244, 243 Pac. 269; *Hodgson v. Mutual Benefit H. & A. Ass'n*, 153 Kan. 511, 112 P. 2d 121; 45 Am. Jur. 685, Release, § 20.)

Plaintiff concedes the correctness and application of the foregoing general rules but contends that her second amended reply sufficiently alleges the fact of the mutual mistake of the parties on March 15, 1946, when the release was executed in that it was not until later that she learned the true facts in connection with his death. Her argument is that as far as the defendant company is concerned, it was either mistaken as to the cause of death or was guilty of fraud

in withholding and concealing facts from the plaintiff, but as heretofore stated, fraud is not pleaded.

In support of the lower court's ruling defendant argues that plaintiff has insufficiently alleged mutual mistake of fact in that what was alleged was neither mutual nor a mistake of fact, and that she was possessed of no *new* facts after signing the release even though she might have arrived at a different conclusion based on those same facts which were either known by her or were available to her prior to the time she signed it.

Let us examine the allegations of plaintiff's second amended reply with reference to the mistake on her part as to the facts, present or past, as of March 15, 1946, the date of the release. In substance she alleges that subsequent to that date she became aware of facts which proved that the death of her husband was due to accidental means; that she became aware of these facts when she began to clean house and to care for the clothing of her deceased husband; that it was *then* that she *observed more in detail* the clothing which he had worn when he returned to his home the morning of the alleged accident and that she *then remembered* the remarks made by him on that date. It will be noted that these are really not new facts which were not in her possession at the time she executed the release. Her pleading states that she *"observed more in detail"* something which she had already observed to some extent and that she *"then remembered"* certain remarks made by her husband on February 5, 1946, apparently pertaining to an *"accident."* (Emphasis supplied.) Even giving such allegations the most favorable inference, we do not think they show that plaintiff was in possession of any more *facts* during the latter part of March, 1946, than those which she already knew when she executed the release. Her allegation in this respect really amounts to no more than that she merely had a change of opinion resulting in different conclusions based upon the same facts which were in her possession at all times. It is quite apparent that her pleading merely alleges a different *conclusion* on her part rather than allegations of facts which were unknown to her previously.

The great majority of the cases dealing with mistake are those where a claimant executes a release for a personal injury *not* known at the time to be serious. In the instant case it would appear that plaintiff's husband told her about his alleged accident on the same date on which it occurred. When she executed the release on March

she was *not* uninformed as to the seriousness of that "accident" because in fact her husband had died on February 28, some two weeks prior to the execution of the release! We thus have a case where the release is executed *after* the ultimate effect of the alleged "injuries" had become known for he had already passed away. Consequently this is not an instance where there are unexpected results arising out of an alleged injury not known at the time to be serious, but instead presents a case of known results from facts known at the time. From the allegations of her pleading it perhaps is a fair assumption that plaintiff changed her opinion concerning her husband's death as a result of receiving technical medical information. If such is the case, then it would appear to be the same information that was available to her when he died on February 28 and when she executed the release on March 15. If she were entertaining any doubt concerning the facts of his death she could have delayed settlement with the company until a later date but she chose to accept the face amount of the policy on the theory that her husband died from natural causes.

In view of our holding that the allegations of the second amended reply are insufficient to allege a mistake of fact, even on the part of plaintiff, as of the date of giving the release, it becomes unnecessary to discuss the question as to their sufficiency with respect to mistake on the part of defendant company.

We have no difficulty in agreeing with the lower court that the allegations of the second amended reply do not sufficiently plead a mutual mistake of fact, and therefore its judgment is affirmed.