of the trial court in each of the cases must be reversed and the causes remanded to such court, with instructions to overrule the demurrer in each case.

*Judgments reversed.*

HILDEBRANT. P. J.. MATTHEWS and ROSS, JJ., concur in the syllabus, opinion, and judgment.

ULRICH, APPELLANT, *v.* MCDONOUGH, APPELLEE.

(No. 628—Decided April 10, 1950.)

*Messrs. Smith & Lehrer,* for appellant.
*Messrs. Flynn, Py & Kruse,* for appellee.

FESS, J. This is an appeal on questions of law from a judgment entered upon a verdict for the defendant, returned by direction of the court at the conclusion of the evidence. Subsequent to the trial, the defendant died and the action was revived in the name of his administrator as defendant.

Plaintiff brought the action to recover for injuries sustained as a result of a collision, and alleged in his petition, in substance, that as he was crossing East Monroe street at its intersection with Perry street in the city of Sandusky, the automobile of defendant, proceeding in an easterly direction, struck the plaintiff, resulting in his injury. He alleged further that defendant failed to exercise ordinary care to avoid striking plaintiff, who was a pedestrian rightfully on the crosswalk within the intersection, in failing to have his automobile under proper control, in maintaining an improper lookout, in driving his automobile with defective lights, and in failing to accord plaintiff the right of way as a pedestrian, as provided by an ordinance of the city of Sandusky.

In his answer, instead of entering a general denial, defendant alleged that plaintiff agreed to compromise

and settle the disputed claim of the plaintiff for the sum of $296.35, and in consideration of the payment thereof the plaintiff in writing released and discharged the defendant from the claims set forth in the petition. The release is set forth verbatim in the answer.

In his reply, plaintiff denied that he agreed to settle and dismiss his claim and alleged that two checks were received by plaintiff at his home—one payable to plaintiff and the hospital and the other to plaintiff and his doctor; that plaintiff has the checks in his possession; that he does not know the source or purpose of them; and that if the checks are supposed to be evidence of consideration for a purported release, he is ready, willing and able to tender the same to the proper owners thereof. Plaintiff alleged further, that on February 18, 1948, an insurance adjuster called at his home and a paper was placed before him which he could not read because of the condition of his eyes; that he signed the paper with the understanding that it was merely for the payment of bills and not for a release or payment in full of any claims which he may have had for damages; and that any purported release in possession of any person or company is void.

The case proceeded to trial upon the above pleadings but apparently was tried as if the allegations of the petition were denied.

Section 11329, General Code, provides in part:

"Excepting averments as to value, or the amount of damage, for the purposes of an action, every material allegation of a petition, not controverted by the answer, and every material allegation of new matter in an answer not controverted by the reply, shall be taken as true."

Under the state of the pleadings in this case the allegations of the petition with respect to the negligence

of the defendant should have been taken as true, and it was unnecessary for plaintiff to produce evidence in support of such allegations. But plaintiff elected to prove such allegations as well as those relating to damages.

When an issue is submitted to the jury as if the unadmitted allegations of a pleading had been properly denied, a demand for judgment on the pleadings after each party has introduced its evidence comes too late. *Woodward* v. *Sloan*, 27 Ohio St., 592; *Lovell* v. *Wentworth*, 39 Ohio St., 614; *Franc* v. *Nirdlinger*, 41 Ohio St., 298, 301; *City of Tiffin* v. *Shawhan*, 43 Ohio St., 178, 183, 1 N. E., 581; *Cincinnati Gas & Electric Co.* v. *Johnston*, 76 Ohio St., 119, 123, 81 N. E., 155; *Heller* v. *Standard Accident Ins. Co.*, 118 Ohio St., 237, 241, 160 N. E., 707; *Shoemaker* v. *Standard Oil Co.*, 135 Ohio St., 262, 20 N. E. (2d), 520.

At the conclusion of the taking of testimony, on motion of the defendant, the court directed the jury to return its verdict on behalf of the defendant. In instructing the jury, the court did not indicate the ground upon which the motion was granted. Upon the record, it could possibly have been granted (1) for failure of plaintiff's evidence to disclose any negligence on the part of the defendant; (2) because plaintiff's action is barred by reason of the release; or (3) that the evidence disclosed plaintiff guilty of negligence as a matter of law proximately contributing to his injury.

1. A review of the testimony indicates some evidence to support plaintiff's claim that the defendant was negligent so that the direction of the verdict can not be supported upon this ground.

2. As to the release, on cross-examination plaintiff admitted that he signed the release in the presence of his brother-in-law who witnessed the instrument but was not called to testify at the trial. Plaintiff also

testified that when he signed the release he thought he was settling for the doctor and hospital bills only. Upon receipt of the checks, plaintiff delivered them to his attorney. At the trial, upon cross-examination of the local agent of the insurance company, counsel for plaintiff asked the agent "At this time, if I tender you these checks, will you accept them as the authorized agent?" Defendant's objection to this question was sustained. No further tender was made other than the statement of plaintiff's counsel, "if you want them we will give them to you."

The insurance adjuster testified that on the evening of February 18, 1948, he told plaintiff that there was no liability but that "if he was going to sign a release, the condition" would be the payment of the doctor and hospital bills by way of settlement. The adjuster said plaintiff had his glasses on when he, the adjuster, handed plaintiff the release but the adjuster was not positive as to whether plaintiff read it before he signed it. He did say that plaintiff had every opportunity to read it, if he did not.

If otherwise valid, the release became effective as a legal document when it was signed by the plaintiff. The failure of the plaintiff to accept the checks for the amount of the consideration set forth in the release did not invalidate it. A question is presented, however, as to whether the averments of the reply and evidence in support thereof are of such a nature as to tend to show that the release was void.

The leading case in Ohio on the subject of releases in settlement of personal injuries is *Perry* v. *M. O'Neil & Co.*, 78 Ohio St., 200, 85 N. E., 41, holding:

"1. A release of a cause of action for damages for personal injuries, that is void, is not a bar to such an action, and the plaintiff may, if it is set up by answer as a bar to his right of action, by reply aver the facts

that make it void; but if it is not void, but only voidable, he can not maintain his action until the release is set aside.

"2. A cause of action for the cancellation of a release of damages for personal injuries and a cause of action for damages for such injuries may be united in the same petition.

"3. If the execution and delivery of the release are admitted, the burden of proving it void is upon the releasor."

It will be noted that if the release is voidable, the action for personal injuries can not be maintained until the release is set aside, but that the action for cancellation may be united with the action for personal injuries. In such case, the equitable cause of action for cancellation is tried by the court. The equitable action should be tried and determined by the court prior to the trial of the personal injury action, but there is no abuse of discretion on the part of the trial judge in trying the two causes of action together. The determination of the equitable action is for the court, however, unless it elects to submit the matter to the jury for an advisory finding. *Flynn* v. *Sharon Steel Corp.*, 142 Ohio St., 145, 50 N. E. (2d), 319.

If the allegations of the reply and the evidence in support thereof disclose that the release is void, a question of fact is presented for the jury under appropriate instructions of the court, and such instructions should include the effect of the consideration paid under the release, by way of mitigation or reduction of damages. The foregoing principle was not carried into the syllabus of the *Perry case, supra,* but is revealed by the authorities in other jurisdictions referred to in the opinion. In *Flynn* v. *Sharon Steel Corp., supra,* the third, fourth, and fifth paragraphs of the syllabus read as follows:

"3. In an action for personal injury where a release is pleaded in the answer, and the averments of the reply are of facts, which, if proven, would render the release void, such cause may proceed to trial and judgment without first determining the validity of the release.

"4. In such action the court *in its discretion may* submit an issue of fraud, as to such release, to the jury under proper instructions.

"5. In an action wherein an issue of fraud is submitted to the jury, its finding in respect thereto is not binding upon the court." (Italics supplied.)

In the *Flynn case*, the averments of the reply set forth facts indicating the release was void. The trial court submitted the issue of the release to the jury and the judgment was affirmed. In the light of the facts in that case, the syllabus should not be construed as holding that the issues relating to a void release are to be determined by the court and not the jury. But when the release is not void but voidable, a party attacking it must seek its cancellation in a separate cause of action which is tried by the court without the intervention of a jury.

Whether a release is void or voidable depends on whether it was obtained by fraud in the factum or in the inducement. Fraud in the factum exists when there is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some trick or device an instrument which the party did not intend to give. *George* v. *Tate*, 102 U. S., 564, 26 L. Ed., 232, referred to in *Perry* v. *M. O'Neil & Co., supra.* Where there is fraud in the procurement or execution of the release, it is void, and its validity may be attacked without restoration or tender, in the absence of a meeting of the minds, as where there was no knowl-

edge on the part of the releasor of the nature of the instrument, or no intention on his part to sign a release or such a release as the one executed. 53 Corpus Juris, 1233, 1235, Sections 50, 51, and 52; *Picklesimer* v. *Baltimore & Ohio Rd. Co.,* 151 Ohio St., 1, 84 N. E. (2d), 214.

In *Flynn* v. *Sharon Steel Corp., supra,* fraud as to the nature of the instrument signed was proven. The opinion quotes from 19 Ohio Jurisprudence, 332, Section 18, as follows:

" 'On the other hand, where there is fraud in the execution such as * * * misrepresentation of the nature of the instrument signed, the transaction is wholly void and ineffective.' "

In the instant case the reply set forth allegations which, if shown by clear and convincing proof, would establish a void release. The evidence relating to the release is conflicting, but regarding the testimony of the plaintiff as true, then the release was void upon the ground of fraud as to the nature of the instrument. This evidence of the plaintiff therefore presented a question of fact for the jury and the court was not justified in directing a verdict for the defendant upon the ground that the release barred recovery.

3. With regard to the contributory negligence of the plaintiff, the facts of the case are also somewhat unusual in that a distinct odor of alcohol emanates from the evidence tendered on behalf of each party. The collision occurred between two and three o'clock a. m. on January 9, 1948. Plaintiff testified that he left his home in the afternoon of January 8th, went downtown, bought some tobacco and on his return home about six o'clock p. m. "changed his mind." He recalls nothing further until he came to his senses in the hospital the next morning. He said:

"When I got there [nearby his home] I changed

my mind. That is all I know, that afternoon, and I wasn't drinking.

"Q. Do you recall being struck by an automobile, or anything? A. I can't recall anything.

"Q. What is the one thing that brings to your mind the fact that you were involved in an accident? A. I didn't know that I even got hit until I came to in the hospital."

Upon cross-examination, plaintiff recalled the details of his trip downtown and back to a point near his home, but could recall no place where he could have been from six o'clock p. m. until three o'clock a. m. the following day. The only eye witness to the collision who testified was the defendant, who was called by plaintiff for cross-examination. Defendant did not take the stand on his own behalf for reasons best known to his counsel.

Upon cross-examination defendant admitted that within an hour prior to the collision he had been stopped by police officers who warned him that his headlights were too dim, and that he had been to several bars and had imbibed four or five bottles of beer. He testified:

"A. I went east on Monroe street, and down to Hancock street, and into Huron avenue and down there.

"Q. Did you hit Mr. Ulrich with your car? A. No, I didn't. He fell into my car. He was going this way (indicating) * * *.

"Q. I asked you if your car struck Mr. Ulrich? A. No, he fell on the fender.

"Q. He fell on the fender? A. Yes, he struck my car instead of my car striking him.

"Q. Where were you when he struck your car? A. Well, he fell off the curb."

Upon further cross-examination of defendant, which

consists of three additional pages of the record, his answers are wholly unintelligible to a reviewing court because they were accompanied by gestures which do not appear in the record. Where there is conflicting evidence and inconsistent answers by the same witness, it is the function of the jury and not the court to determine which of several inconsistent answers are more probably true. *Painesville Utopia Theatre Co.* v. *Lautermilch,* 118 Ohio St., 167, 172, 160 N. E., 683. But upon this portion of the record the answers of the defendant, from which it may be claimed that an inference may be drawn that plaintiff did not stumble or fall into the side of defendant's car, are so confusing and unintelligible that a reviewing court can not find that such answers are either inconsistent or contradictory to defendant's previous positive testimony that plaintiff fell into his car. The trial court had the opportunity to observe the gestures of the defendant and from aught the record reveals, the answers may have been consistent with his previous testimony.

Each of the two officers who reached the scene shortly after the accident said the plaintiff was lying in the street in front of defendant's automobile which was stopped on defendant's lefthand side of his line of travel; that defendant had liquor on his breath, but his speech was coherent; and that after a questioning at the police station he was released. One of the officers said also that plaintiff had liquor on his breath.

From the positive testimony of the defendant on cross-examination, plaintiff fell into the side of defendant's car and, in the absence of explanation, was thereby charged with negligence as a matter of law proximately contributing to his injury. *Rutter* v. *Norman* (La. 1939), 189 So., 609.

Since plaintiff elected to introduce evidence relating to the claimed acts of negligence of the defendant notwithstanding the absence of denial thereof by defendant, and in view of the testimony of the defendant, the action of the court in directing the jury to return a verdict on his behalf was justified.

*Judgment affirmed.*

CONN and CARENTER, JJ., concur.