No. 44,252

JESSIE M. REYNARD, *Appellant,* v. A. L. BRADSHAW, *Appellee.*

(409 P. 2d 1011)

Opinion filed January 22, 1966.

*Russell Cranmer,* of Wichita, argued the cause, and *Gerald L. Michaud, Orval L. Fisher,* and *M. William Syrios,* all of Wichita, were with him on the brief for the appellant.

*Gerald Sawatzky,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Donald L. Cordes, Robert L. Howard, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger, Benjamin C. Langel,* and *Phillip S. Frick,* all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This was an action for damages for personal injuries resulting from an automobile collision in which defendant denied liability and alleged a prior compromise and settlement of the claim. A jury verdict upheld the settlement. Plaintiff appeals.

Highly summarized, plaintiff's petition in pertinent part alleged that on November 18, 1961, plaintiff had stopped her automobile at a stoplight at a street intersection in Wichita and was negligently hit in the rear by an automobile driven by defendant, and thereby caused to suffer personal injuries and damages in the sum of $77,943.30, for which she sought recovery. Defendant's answer alleged that at the time and place in question he was following plaintiff into an intersection when the traffic light was green whereupon plaintiff suddenly and without signal stopped her car causing defendant to bump into her; defendant denied negligence on his part and claimed the plaintiff was guilty of negligence in causing the collision; defendant denied damages and further alleged that a compromise settlement was entered into by the parties on December 13, 1962, wherein plaintiff executed a written instrument releasing the defendant of all liability in consideration of the sum of $2,500.00 which amount was tendered to her, and defendant prayed that the settlement agreement be enforced.

Plaintiff filed her reply admitting she signed a written release on December 13, 1962, but she alleged she was not paid the consideration stated therein at the time of the execution thereof and therefore the release is void and of no effect; she further alleged that the next day she demanded the return of said release from defendant's insurance company but did not receive it and instead received the insurance company's check which she returned on December 19, 1962; further that there was a mutual mistake of fact as to plaintiff's condition between plaintiff and defendant at the time of the signing of the release and it was therefore void.

The release in question was as follows:

"RELEASE OF ALL CLAIMS

"KNOW ALL MEN BY THESE PRESENTS:

"That the Undersigned, being of lawful age, for the sole consideration of Two Thousand Five Hundred Dollars and no/100 Dollars ($2,500.00) to the undersigned in hand paid, receipt whereof is hereby acknowledged, do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns release, acquit and forever discharge A. L. Bradshaw and his, her, their, or its agents, servants, successors, heirs, executors, administrators and

all other persons, firms, corporations, associations or partnerhips of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 18th day of November, 1961, at or near Kellogg & Broadway, Wichita, Kansas.

"It is understood and agreed that this settlement is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releasees deny liability therefor and intend merely to avoid litigation and buy their peace.

"The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed, that the undersigned rely(ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

"The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

"THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

"Signed, sealed and delivered this 13th day of December, 1962.

"Caution: Read Before Signing Below

"Jessica M. Reynard    LS

"/s/   Floran A. Rodgers
        "Witness
"/s/   Marsha A. Wendling
        "Witness
"/s/   Lelia C. Jones
        "Witness
            "[Acknowledgment]."

At a pretrial conference the parties entered into a stipulation, pertinent parts of which provided:

"4. The release introduced as joint exhibit 10 was signed by Jessie M. Reynard on December 13, 1962, and given to Wendell Uhland.

"5. Jessie M. Reynard did not receive the $2,500.00 recited in the release on the date and at the time she signed the release.

"6. Wendell Uhland of the Universal Adjustment and Inspection Company was adjusting the claim of Jessie M. Reynard against A. L. Bradshaw for the Allstate Insurance Company.

"7. On December 14, 1962, Jessie M. Reynard by and through her attorney Gerald L. Michaud, contacted Wendell Uhland of the Universal Adjustment and Inspection Company and notified Wendell Uhland that the $2,500.00 would not be accepted by Jessie M. Reynard and further requested that the release be returned.

"8. On December 17, 1962, John Vander Lippe of the Allstate Insurance Company sent by mail to the plaintiff its check in the amount of $2,500.00 and tendered payment of the consideration recited in the release.

"9. On December 18, 1962, Jessie M. Reynard received by mail the $2,500.00 check of the Allstate Insurance Company and the following date mailed the same to John Vander Lippe of the Allstate Insurance Company."

No pretrial order further defining the issues was made, but after the trial had commenced plaintiff moved for an order based upon the pleadings and the stipulation that the release be held as a matter of law to be not binding upon the plaintiff and no defense to plaintiff's cause of action. This motion was overruled and jury trial was had with evidence received pro and con on matters at issue. The jury brought in a special verdict and answered a special question as follows:

"We, the Jury, impaneled and sworn in the above-entitled case, do upon our oath find that the release contained in Exhibit No. 10 is binding, and assess Plaintiff's recovery at $2,500.00.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"SPECIAL QUESTIONS

"1. Q. What do you find the agreement was, if any, between Jessie M. Reynard and Wendell Uhland, repersentative of Allstate Insurance Company, as to when Jessie M. Reynard would receive the settlement check?

"A. Receive check by mail."

Plaintiff assigns as error first that the trial court failed to sustain her motion that the release be held as a matter of law to be not binding upon her and no defense to her cause of action. Plaintiff argues there was a complete failure of consideration for the release when the $2,500.00 was not paid upon execution. Defendant urges that the release constituted a bilateral compromise settlement of the claim and that it became effective immediately, it being further understood by the plaintiff and the insurance adjuster acting for defendant that the consideration would be paid by check through the mail within a few days.

We are not cited to nor has our research disclosed any of our own cases directly in point. Isolated statements of general law may be found in some which at first blush may seem pertinent but different factual situations render them of no value here.

The instrument in question was entitled "Release of All Claims."

Releases may be of different kinds and, as such, have been compared with and distinguishd from other methods used in relinquishment and settlement of claims (76 C. J. S., Release, §§ 1-5, pp. 629-631; 45 Am. Jur., Release, §§ 1-4, pp. 674-677) but the distinctions made are not always clearcut, and it is not particularly helpful or necessary to go into the definitions used, which are many and varied. The legal effect of a document is not to be determined solely from its name although that may be taken into account. The first question, as it is in the construction of any written instrument, is, what was the intention of the parties? This is to be gleaned from the instrument itself and where that expresses the intent, the inquiry is ended. The claim which was the subject matter of the instrument, being one for tort liability, was for an unliquidated and uncertain amount. As in most automobile collision claims, the question of liability and the nature and extent of damage were possible issues and the whole matter was one subject to honest disagreement. Settlement was undertaken by an adjuster on behalf of defendant's insurance carrier. Culmination of the negotiations was the execution and delivery of the instrument in question. It recited the compromise nature of the subject matter, that is, a disputed claim growing out of the collision November 18, 1961. The terms of the settlement were definite and they were assented to by the acts of both parties. Plaintiff's assent is evidenced by her signature and further by delivery of the instrument to the adjuster; that of defendant by the acceptance back of the instrument after plaintiff's signature. The instrument was complete in every way except it remained only for payment to be made. The fact the instrument was not signed by the party being released is of no significance in determining its binding effect on both parties where the instrument shows on its face it was not intended to be signed by the party obtaining the release. No more than a single document, by whatever name, should be required to effect a binding settlement when that intent clearly appears in the instrument.

Plaintiff urges that the so-called release was merely an offer to settle on her part and that it remained revocable at her will until actual payment was made. We think there was more than a mere offer to settle on the part of either party. The presentation of the release to plaintiff by one authorized to settle the claim could be construed as an offer on the part of the defendant, and plaintiff's act in signing and delivering the instrument as an acceptance

thereof. To accept plaintiff's contention would be in effect to say that plaintiff's acceptance of defendant's proposition to pay amounted to an agreement to accept the money when and if offered and not to accept any agreement to pay, and that plaintiff had the right to refuse acceptance even though she had previously agreed to accept; in short, that plaintiff's acceptance without further performance amounted to nothing at all. We think the parties intended more than just a hollow ceremony. As a matter of law it would make no difference who made the offer and who made the acceptance. What is essential is that there was a definite proposition accepted by both parties. In other words the release shows a mutual meeting of the minds of the parties resulting in mutual promises and we think the release on its face shows it was so intended by them. The compromise of a disputed claim furnishes good consideration for a contract (17 C. J. S., Contracts, § 105, p. 824). Here then are all the elements of a valid contract, and we have no doubt either of the parties could have enforced it. The law favors contracts in settlement of disputed matters and the avoidance of litigation and it ought not circumscribe the means of carrying such settlements into effect.

The fact the $2,500.00 was not tendered until a few days after the execution of the instrument would not constitute such a material failure of consideration as would entitle plaintiff to rescind the contract. Mere delay in performing a contract is not such substantial breach, justifying rescission, unless the delay is such as to warrant the conclusion that performance is not intended. Performance within a reasonable time would be sufficient. (17A C. J. S., Contracts, § 422, pp. 516-521.) The instrument on its face shows it was never intended by the parties to operate merely as a receipt for money received. Rather it appears to be an intentional relinquishment of a disputed claim for a definite sum. We think its recital that its terms were contractual in nature is properly descriptive regardless of whatever name it is called. In Restatement of the Law, Contracts, § 402, wherein a written discharge of a right is described as a release, we note this:

"(1) A writing, either under seal or supported by sufficient consideration which states that one or more of the maker's contractual rights or rights to compensation are discharged, is a release and is operative immediately in accordance with its terms when the maker puts it out of his possession with the apparent intent that it shall become immediately effective." (p. 757.)

In *Johnson v. Norfolk*, 76 S. D. 565, 82 N. W. 2d 656 (1957), plaintiff, a passenger in an automobile involved in a collision, signed a release in all respects like that in the case at bar. Although it acknowledged receipt of the sum agreed upon nothing was paid at the time. The following day plaintiff hired counsel who, five days thereafter, wrote the adjustment firm handling the claim asking for a return of the release and advising that plaintiff would return any payment tendered for the purported settlement. The trial court held the execution of the release by the plaintiff was only an offer to compromise which she revoked before it had been accepted by payment of the amount recited therein. The appellate court reversed, holding that the release constituted a binding contract of compromise and settlement of the claim. The same conclusion was reached upon a similar state of facts in *Hofland v. Gustafson*, 132 C. A. 2d Supp. 907, 282 P. 2d 1039. See, also, *Ulrich v. McDonough*, 89 Ohio C. A. 178, 101 N. E. 2d 163, *Segal v. Allied Mutuals Liability Ins. Co.*, 285 Mass. 106, 188 N. E. 504; *Tooke v. Houston Fire and Casualty Insurance Co.*, (La. App.), 122 So. 2d 109 (1960). We hold then that the instrument in question constituted a contract of compromise and settlement of plaintiff's claim which became effective when it was signed and delivered by plaintiff and that, if otherwise valid, it constituted a bar to her cause of action, and that the trial court did not err in refusing to rule as a matter of law that the instrument was not binding upon plaintiff and was no defense to her claim.

Plaintiff urges error in the fact that the trial court permitted evidence to be received as to a possible side agreement between plaintiff and the adjuster as to when plaintiff would actually receive the settlement check. Here again the evidence was in some dispute, the plaintiff's version being that she understood she would get the money forthwith upon execution of the release. This matter was submitted in some form to the jury but as to exactly how we cannot determine since the instructions to the jury are not included in the record on appeal. The jury found adversely to plaintiff on this as reflected in its answer No. 1 to the special question hereinbefore quoted.

Under the view we have taken the receipt of evidence one way or another on this subject would be immaterial. In any event plaintiff is hardly in a position to complain of error in a situation wherein apparently she was allowed a further avenue of avoiding

the release had her factual version of the manner of payment been accepted by the jury. The jury's special finding was supported by sufficient evidence. The burden remains always on the appellant to show error, she has not affirmatively sustained that burden, prejudice is not patent, and absent the instructions indicating how this whole matter was submitted to the jury we cannot assume error in the court's actions.

The agreement would be subject to rescission for the same reasons as any other contract, and in the case at bar it was submitted to the jury for determination of validity upon the question of mutual mistake of fact. Under instructions which we must assume were proper the jury upheld the release in its special verdict as heretofore set forth.

Plaintiff further urges reversal of the judgment because the uncontroverted evidence showed there was a mutual mistake of fact between the parties as to material existing facts at the time the release was executed in that plaintiff did not know the nature and extent of her existing condition. There are several reasons why this contention is unavailing. First, there is no evidence at all of any such mistake of fact on the part of defendant or of the adjuster or of anyone else acting on behalf of defendant, and plaintiff's contention does not even state that there was. This might well end the matter for a mere mistake of fact on the part of one of the parties to a release, in the absence of a showing of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release (*McMillin v. Farmers & Bankers Life Ins. Co.*, 167 Kan. 502, Syl. ¶ 2, 206 P. 2d 1061). However, we have reviewed this extremely voluminous record, and it is far from uncontroverted that plaintiff herself did not know her condition at the time of the settlement. Briefly stated, she had gone to a chiropractor, a medical doctor and a psychiatrist, all of her own choosing, for numerous examinations, and had been hospitalized at least twice for tests, and had been informed by her doctors of the results of all this experience. Negotiations leading up to the settlement were carried on over a period of several months time and counting telephone conservations, included at least twelve conferences between plaintiff and the adjuster. It could hardly be said there was uncontroverted evidence even of a unilateral mistake of fact. And finally, the exact nature and extent of any disability of plaintiff and consequent damage at the time of the settlement, and

in the future including the time of trial, were matters of considerable issue under the evidence. The jury's finding against the plaintiff on the issue of mutual mistake of fact was amply supported by substantial evidence.

We find nothing to warrant disturbing the orders and judgment of the trial court and they are affirmed.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: It seems to me this case presents a simple unilateral contract which is in writing. It is signed only by the plaintiff, witnessed, and acknowledged before a Notary Public. It recites that the plaintiff "for the *sole consideration* of Two Thousand Five Hundred Dollars and no/100 Dollars ($2,500.00) to the undersigned *in hand paid, receipt whereof is hereby acknowledged,*" (Emphasis added) releases the defendant of all claims growing out of personal injuries and property damage as a consequence of a certain accident.

It was stipulated at the pretrial conference the plaintiff did not receive the $2,500 recited as consideration at the time she signed the release and gave it to the insurance adjuster. In other words, the sole consideration recited in this unilateral contract was not in fact paid to the plaintiff when she signed the contract—the recital was false. It should be noted that this written contract was prepared by the adjuster for the insurance company.

In my opinion, it is simple hornbook law that a unilateral contract under these circumstances fails for want of consideration. Where the consideration in a unilateral contract fails, the contract is not binding and cannot be enforced.

It is recognized in this jurisdiction that where a written contract recites consideration, parol evidence is admissible to show that no consideration was actually given. This avoids the binding force of the contract. In the instant case this was accomplished by a stipulation at the pretrial conference.

Even if the release in question be construed as a so-called bilateral contract, a point which I do not concede, the legal significance of the written release constitutes no more than an offer on the part of the plaintiff to release the defendant of all claims for the sum of $2,500 (assuming the written terms of the contract can be altered to give the insurance company a reasonable time to pay). This offer can be accepted only by the payment of the $2,500 recited. But here again it is simple hornbook law that one

who undertakes to enter into a bilateral contract by making an offer to another is permitted to withdraw the offer, provided withdrawal is communicated to the other party prior to his acceptance of the offer. In this case counsel for the plaintiff notified the adjuster for the insurance company of the withdrawal of the offer prior to the tender by the Allstate Insurance Company of the $2,500 to the plaintiff.

Therefore, even if the release in question be construed as a so-called bilateral contract, it is unenforceable as a matter of law.

The court holds the written release in the instant case represents a mutual meeting of the minds of the parties resulting in mutual promises, and declares all the elements of a valid contract to exist. It says "we have no doubt either of the parties could have enforced it." In a suit to recover the recited consideration this will come as a shock to an insurance company when it finds a unilateral contract of this nature, negotiated by an insurance adjuster, is binding upon the home office of the insurance company prior to the payment of the amount of money recited in the release. For a case involving the practice of adjusting claims between an insured and the insurance company, see *Grohusky v. Atlas Assurance Co.*, 195 Kan. 626, 408 P. 2d 697.

It is respectfully submitted the judgment of the lower court should be reversed with directions to grant the plaintiff a new trial.

FATZER and O'CONNOR, JJ., join in the foregoing dissenting opinion.