No. 46,713

Dr. John E. Fieser, *Appellant,* v. Kenneth J. Stinnett, and James D. Stinnett, *Appellees.*

(509 P. 2d 1156)

Opinion filed May 12, 1973.

*Terry O'Keefe,* of Wichita, argued the cause, and *Martha R. Hodges* and *Walter C. Williamson,* both of Wichita, were with him on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers and Eberhardt, of Wichita, argued the cause, and *Robert L. Howard,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

Kaul, J.:  The issue in this case is whether a settlement release, executed by plaintiff-appellant for injuries suffered in an automobile accident, is binding and not invalidated by reason of either mutual

mistake of fact or inadequacy of consideration. Plaintiff appeals from an adverse ruling by the trial court.

Dr. Fieser, the plaintiff, is a doctor of veterinary medicine. On the morning of March 7, 1969, at about 5:30 a. m. he received a call and was proceeding to his client's farm to aid in the delivery of a calf. It was dark and his view of the road was further obscured by heavy fog. Plaintiff ran into defendants' automobile, which was unattended and parked on the roadway. Using his two-way radio, plaintiff called for help and was assisted by the client who had called him. Dr. Fieser proceeded to the client's farm where he delivered the calf.

Later in the day plaintiff called on Dr. Schopf, his personal physician. X-rays were taken of plaintiff's chest and neck, which were the areas giving him the most problems at the time. No broken bones were found, but he was bruised and was given ultrasonic treatment. A week later, on March 14, 1969, plaintiff was again examined by Dr. Schopf. In the meantime, plaintiff had been negotiating with an adjuster for defendants' insurer to whom plaintiff gave a statement on March 13. On March 17 plaintiff signed the release in question and accepted and cashed a draft in the amount of $3,500.00. In his pretrial deposition plaintiff testified:

"At the time I accepted and cashed the draft, I full well understood that State Farm was paying me the money on the basis of $2,300 property damage and $1,200 for my personal injury claim, lost time, pain and suffering and that sort of thing and knew that I was receiving $1,200 for my personal injuries, my doctor bills, lost time and for whatever injuries I had, the nature and extent of which were unknown and uncertain."

Sometime later, in 1969, plaintiff was advised that he had a ruptured disc in his lower spine for which a laminectomy was performed on January 15, 1970. In connection with this operation other litigation was initiated by Dr. Fieser (See *Fieser v. St. Francis Hospital & School of Nursing, Inc.*, 212 Kan. 35, 510 P. 2d 145).

On December 16, 1970, plaintiff filed his petition in the instant action seeking damages for his injuries and further damages for the alleged gross and wanton negligence of defendants.

Defendants filed their answer on January 20, 1971, alleging plaintiff had compromised and settled his claim as reflected by the release which, with formalities deleted, reads:

"RELEASE

"**For The Sole Consideration** of Three thousand five hundred Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned

hereby releases and forever discharges Kenneth Stinnet and James Stinnet his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 7th day of March 1969 at or near Sumner Co. Rd. # 43 Sumner Co. Ks.

"Undersigned hereby declares that the terms of this settlement have completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

"Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above."

Thereafter plaintiff's deposition was taken and defendants filed a motion for summary judgment. On October 1, 1971, plaintiff was granted leave to file a reply in which he admitted execution of the release but alleged:

". . . [It] was executed on the mutual mistake of fact by both plaintiff and the defendants that the plaintiff had only minor injuries and that he would return to work soon after the execution of the Release. . . ."

The administrative judge of the district court assigned the case to division No. 7, which entered the judgment from which this appeal is taken.

At the outset, we must consider plaintiff's contention that the questions concerning inadequacy of consideration and mutual mistake were both issues of fact and should have been submitted to a jury. Of course, plaintiff is correct in his assertion that such questions are normally for the trier of facts, but this is not to say that they cannot, with the consent of the parties, be submitted to the court for determination on motion for summary judgment. In this connection the pertinent portions of the journal entry of judgment reads as follows:

"THEREUPON, plaintiff moves the court for permission to file out of time herein a reply setting forth certain defenses to the release, which motion is granted and the court orders that a reply setting forth the defenses of mutual mistake of fact and inadequacy of consideration may be filed forthwith and the above cause may proceed to hearing upon the issues joined by the petition, answer and reply.

"THEREUPON, counsel announce to the court that for the purpose of properly submitting all issues to the court for determination at this time, the parties stipulate and agree as follows:

"1. If the doctors who have treated plaintiff were called as witnesses there would be a difference of opinion as to the precipitating cause of the herniated intervertebral disc for which plaintiff was later treated. However, for the purpose of this motion only, it is stipulated that plaintiff can produce medical evidence to the effect that at least since 1965 plaintiff had had a pre-existing back condition known as an unstable lumbo-sacral spine; that at the time of the accident plaintiff received some injury to his back; and that the herniated intervertebral disc for which plaintiff was later treated was either directly and proximately caused by such injury, or was contributed to by such injury as an aggravation of the pre-existing condition.

"2. That the deposition of the plaintiff and exhibits thereto may be received in evidence as part of the record herein.

"3. That the issues of the validity of the release, mutual mistake of fact, and inadequacy of consideration are properly before the court and the parties stipulate and agree that these issues are ready for the court's decision on the merits on the record now before the court.

"THEREUPON, the court having considered the pleadings filed in this case, the deposition of Dr. John E. Fieser and the exhibits attached thereto, and the stipulations of the parties, and after hearing the statements and arguments of counsel, and the parties having stipulated that the case may now be decided on its merits makes and enters the following findings and conclusions herein:

"1. The release executed by plaintiff herein was not given under any mutual mistake of fact which would invalidate the release as a matter of law or leave the determination of the validity of the release to a jury;

"2. The release was given for good and valid consideration;

"3. The release is not ambiguous and constitutes a complete defense to all claims made in this lawsuit;

"4. Judgment should be entered in favor of defendants and against plaintiff and costs herein taxed to the plaintiff effective upon filing of the journal entry of judgment herein."

No challenge is made to the correctness of the journal entry, thus we are bound by its terms on appellate review. The parties agreed that all issues concerning the validity of the release were properly before the court and ready for the court's decision on the merits on the record presented. Suffice it to say the parties agreed the court could decide all issues concerning the release without the aid of a jury, thus asserting error in failing to submit the issues to a jury is simply misplaced. If error occurred in this respect, it was invited by the parties, neither of whom can now be permitted to complain. (*Elwood-Gladden Drainage District v. Ramsel*, 206 Kan. 75, 476 P. 2d 696; and *Thompson v. Aetna Life Ins. Co.*, 201 Kan. 296, 440 P. 2d 548.) Parties are bound by stipulations fixing the issues and will not be permitted to depart therefrom on appeal. (*Manhattan Bible College v. Stritesky*, 192 Kan. 287, 387 P. 2d 225.)

Plaintiff further contends the trial court erred in not finding mutual mistake under the evidence presented. Plaintiff argues the

uncontroverted evidence showed there was a mutual mistake of fact between the parties as to material existing facts at the time the release was executed in that plaintiff did not know the nature and extent of his existing condition. Plaintiff's position in this regard cannot be maintained for several reasons. First, there is no evidence of any mistake of fact on the part of defendants or of the adjuster, or of anyone else acting on behalf of defendants, and plaintiff makes no assertion to that effect. The mere mistake of fact on the part of one of the parties to a release, in the absence of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release. (*Reynard v. Bradshaw,* 196 Kan. 97, 409 P. 2d 1011; and *McMillin v. Farmers & Bankers Life Ins. Co.,* 167 Kan. 502, 206 P. 2d 1061.)

The evidence in this case reflects that the release was given as a result of a compromise and settlement agreement negotiated at arm's length between plaintiff and the insurance adjuster.

Plaintiff testified:

"I do not recall talking to the doctors about settling my claim, nor talking to anyone else specifically. I remember a lot of people coming to me and telling me, 'You should never settle that thing. You should sue them.'

"It was specifically called to my attention by so-called helpful advisors that I could sue the Stinnett's, but I chose to take the $3,500 for whatever reason I had.

"I understand you can sue anybody for anything at anytime. The reason I settled was because I had gone to the doctor and had x-rays made of my chest, neck, abdomen, and they found no broken bones and so, being in the medical profession myself, I thought that I was only bruised severely and this would pass, and I would be able to go back to work. I didn't think at the time that I had any permanent injuries. Although on the 17th of March. I didn't know the full extent of my injuries, I thought I would have no further complications, and further damage, and that I had no broken bones show up on X-ray. This is true of farm animals. I know that 90% of the time there is no permanent damage and after a period of being sore and stiff you are back to being normal. 10% of the time there is a possibility that complications will arise that aren't foreseen by either the M. D. or Vet. This was a possibility that existed at the time that I accepted the $3,500 claim, but not a probability."

Plaintiff testified that he had a sore back following the accident and, as set forth in the journal entry, it was stipulated by the parties that plaintiff received some injury to his back in the accident.

Plaintiff is an educated man with far more than ordinary knowledge of the uncertainties involved in judging the extent and consequences of personal injuries. In this connection, plaintiff further testified:

"At the time I signed the release I simply made a conscious decision based upon my experience and upon what I thought my condition would or wouldn't be and taking everything into consideration, I decided to go ahead and settle for the $3,500. And then later after complications set it [*sic*], as I looked back on the matter through hindsight, I felt it wasn't a wise decision.

"I knew that a lawyer was available at any time. At the time I signed the release, I based my decision upon my experience and what I thought my condition to be. . . ."

It is an elemental rule that the law favors compromise and settlement of disputes and in the absence of bad faith or fraud, when two parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it. (*Elwood-Gladden Drainage District v. Ramsel,* supra; *Connor v. Hammer,* 201 Kan. 22, 439 P. 2d 116; and *Flott v. Wenger Mixer Manufacturing Co.,* 189 Kan. 80, 367 P. 2d 44.)

By his own testimony, plaintiff was well-aware of the uncertainty with respect to the consequence of his injuries, but he proceeded to rely on his own experience and knowledge in agreeing to a compromise and settlement of his claim. We believe there is ample evidence to support the trial court's ruling in this regard.

To support his position on the point under consideration plaintiff relies primarily on the case of *Farmers Muntual Automobile Insurance Co. v. Buss,* 188 F. Supp. 895 (D. Kan. 1960), wherein a release for personal injuries suffered in an automobile accident was stricken on the ground of mutual mistake. The reported opinion by District Judge Arthur J. Stanley, Jr., is on denial of a motion for a new trial. Buss suffered a severely fractured leg and was hospitalized on July 23, 1957. Two days later, on July 25, he was interviewed by an adjuster and again on August 6. On August 9 the adjuster returned to the hospital bringing with him a draft payable to the hospital in the amount of $500 and a draft payable to Buss and his wife in the amount of $300. After some discussion, Buss and his wife accepted the drafts and signed the release in question. The extent of the injuries to his leg had been purposely withheld from Buss by his physician for medical reasons. On this point, Judge Stanley stated in the opinion:

"The facts which existed at the time this release was signed were then known to the attending physician and were available to French had he interviewed the physician or examined the records of the hospital. The same facts, for medical reasons, were withheld from Buss. So far as both were concerned, the real facts as to the seriousness of the injury, when eventually they became known to them (after the release had been executed), were new facts. To say

that knowledge that Buss 'had a broken leg and nothing else' is the equivalent of knowledge that he had suffered a comminuted fracture of the upper third of the femur, with involvements which might require amputation and might even take his life—an injury which after hospitalization for ninety-two days kept him confined to his bed for two months and on crutches for four or five months thereafter, and which left him with one leg two inches shorter than the other—is to play with words." (pp. 897, 898.)

The factual distinctions between *Buss* and the case at bar are obvious, likewise other cases cited by plaintiff have been examined and found to be factually distinguishable or not in point because of the posture of the cases on appeal. Most of the other cases cited by plaintiff involved a master-servant relationship—for example *Koshka v. Railroad Co.*, 114 Kan. 126, 217 Pac. 293, wherein the plaintiff, who could neither read nor write, depended upon his employer's doctor and testified that he thought he was signing a receipt for wages due rather than a release for personal injuries. In *Parrott v. Railway Co.*, 111 Kan. 375, 207 Pac. 777, where plaintiff was an injured passenger there was evidence of collaboration between the defendant's doctor and claims agent in securing a release from plaintiff. In *Rider v. Railway Co.*, 112 Kan. 765, 212 Pac. 678, plaintiff was treated by and relied on the advice of defendant's doctor, who directed plaintiff to return to work as cured. *Crouch v. Missouri Pac. Rld. Co.*, 128 Kan. 26, 276 Pac. 81, was an action under the federal employers' liability act. A release given by the injured workman, before his death, was found by the jury to have been executed by reason of the mistaken belief on the part of both parties that the injury, from which the workman died, was only superficial and not serious.

Plaintiff knew that since 1965 he had had a preexisting back condition known as an unstable lumbo-sacral spine; he knew that he received some injury to his back and, by his own testimony, he was aware of the uncertainty as to the result of that injury. The applicable rule is stated in 15 Am. Jur. 2d, Compromise and Settlement, § 34:

". . . Since the parties assume the risk of mistake as to matters intended to be resolved by the compromise, a compromise and settlement is not defective merely because the parties were ignorant or mistaken as to the full extent of their rights. In order for a mistake to have legal significance and to constitute a basis for invalidating a compromise, it must be based upon the parties' unconscious ignorance; it must not relate to one of the uncertainties of which the parties were conscious and which it was the purpose of the compromise to resolve and put at rest. A person who enters into a compromise, consciously ignorant of a fact but meaning to waive all inquiry into it, is not mistaken, in

the legal sense; in such a situation it is the intention of the parties to accept the consequences of uncertainty. . . ." (pp. 967, 968.)

The future duration and ultimate effect of plaintiff's injuries were unknown and future developments uncertain, a mistake in this regard was no more than a mistake of opinion, prophecy, or belief. (*Reynard v. Bradshaw*, supra; *McMillin v. Farmers & Bankers Life Ins. Co.*, supra; *Harp v. Red Star Milling Co.*, 121 Kan. 451, 247 Pac. 856; and *Tucker v. Atchison, T. & S. F. Rly. Co.*, 120 Kan. 244, 243 Pac. 269.) The burden was upon the plaintiff to prove that the giving and acceptance of the receipt was a mutual mistake. The issue was submitted to the trial court, the trier of fact, and its finding is supported by the evidence.

Plaintiff made a conscious decision based on his own experience and knowledge as to what he thought his condition would or would not be, he decided to go ahead and settle; later, after complications set in, he felt, through hindsight, that he had not made a wise decision. The situation is similar to that presented in *Connor v. Hammer*, supra, which this court described as a case where plaintiffs accepted an offer of settlement, then changed their minds and wished to repudiate it.

Plaintiff next contends the trial court erred in holding the release was given for a good and valid consideration. Much of plaintiff's argument on this point is devoted to the proposition that where consideration for a contract is controverted, the question should be submitted to a jury. (Citing *Ferraro v. Fink*, 191 Kan. 53, 379 P. 2d 266.) As we have previously pointed out, the parties consented, as evidenced by their stipulation, to submit to the court the question for consideration, as well as all other questions, concerning the validity of the release. The trial court specifically found the release was given for a good and valid consideration. We find no reason to disturb the ruling. Inadequacy of consideration does not invalidate a compromise if fairly made. (*International Motor Rebuilding Co. v. United Motor Exchange, Inc.*, 193 Kan. 497, 393 P. 2d 992.) Moreover, the compromise of a disputed claim in itself furnishes good and valid consideration for a contract. (*Reynard v. Bradshaw*, supra.)

Lastly, plaintiff claims the trial court erred in holding that the release was not ambiguous. Plaintiff says that since there was an allegation of mistake the question whether or not the contract was ambiguous should have been submitted to a jury. (Citing *Walsh v.*

*Fuel Co.,* 102 Kan. 29, 169 Pac. 219.) Here again, plaintiff's position is thwarted by the stipulation of the parties. Moreover, the *Walsh* case simply stands for the proposition that the construction of an unambiguous contract is a matter of law for the court where there is no charge of fraud, accident or mistake. The instant release is clear and unambiguous and the trial court properly so ruled.

We find nothing to warrant disturbing the rulings of the trial court, and therefore its judgment is affirmed.