**Jo Anne DORNER, Plaintiff,**

v.

**POLSINELLI, WHITE, VARDEMAN & SHALTON, P.C., Defendant.**

Civ. A. No. 93–2328–EEO.

United States District Court, D. Kansas.

June 1, 1994.

**1484**

Sue Phillips, Elizabeth A. Phillips, Phillips & Phillips, Kansas City, MO, for plaintiff.

Charles W. German, Robert M. Thompson, Phillip G. Greenfield, Brenda G. Hamilton, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion for summary judgment (Doc. # 42). Plaintiff has responded and opposes the motion. Having reviewed the motion, defendant's briefs in support thereof, plaintiff's brief in response, and exhibits, the court is now prepared to rule. For the reasons set forth below, defendant's motion is granted.

Count I of plaintiff's complaint alleges that plaintiff was retaliatorily discharged in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3). Count II alleges that defendant violated the FLSA by withholding paychecks and failing to pay for overtime work, and Count III alleges that the withholding of plaintiff's paychecks vio-

lated the Kansas Wage Payment Act. Count IV alleges a violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the Equal Pay Act. Count V asserts a violation of the Kansas Act Against Discrimination ("KAAD"), and Count VI alleges a claim of negligent supervision. Finally, Counts VII and VIII allege claims for tortious interference with prospective business relationships and defamation.

### I. *Standards Governing Summary Judgment.*

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater*

*Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 206(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

## II. *Factual Background.*

The facts appear to be as follows for purposes of this motion:

Plaintiff Jo Anne Dorner was employed as a full-time paralegal and office coordinator by defendant, a Kansas City law firm, from October 30, 1989, to August 28, 1992. Plaintiff believed she had not been properly compensated by defendant for overtime hours worked. Following her employment with defendant, plaintiff demanded money to satisfy employment-related claims. On September 25, 1992, following negotiations concerning these claims, the parties executed a "Release and Receipt Between JoAnne E. Ludecke [1] and Polsinelli, White, Vardeman & Shalton." Defendant paid plaintiff $4,047.52 in exchange for, among other things, a release stating that plaintiff "[w]aives, abandons, and releases all claims for additional pay including salary, back pay, sick leave pay, vacation pay, bonus pay, overtime pay, severance pay, compensation of any sort or damages," and further stating that she had been paid in full for all such claims.

Prior to executing the release, plaintiff consulted with an administrative agency on at least two occasions to determine the relevant law relating to payment of wages and overtime compensation. Plaintiff testified that she is an experienced litigation paralegal, who has dealt with many releases, probably over 100, during the course of her work. Plaintiff understands that releases have legal significance, and understands that in the context of litigation, parties enter into settlement agreements which include releases. Additionally, plaintiff testified she assumes a document is a release if it states it is a release in the title. She knew at the time she signed the release that it stated "release" in the title. When asked whether she could have sought an attorney's advice with respect to whether she should sign the document, plaintiff responded: "I wasn't being held at gunpoint. But I felt like I was in a position, to get those checks, I was going to have to sign that document."

Plaintiff agreed to sign the release if she could "cross out some things." Plaintiff did delete, with the agreement of defendant, a portion of the release language. Plaintiff did not delete, however, the release language that waives any claim for damages.

On or about September 29, 1992, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). In that charge, plaintiff alleged discrimination with respect to the terms and conditions of her employment by defendant. The EEOC issued a right to sue letter on June 30, 1993. On or about February 5, 1993, plaintiff filed a complaint with the Kansas Human Rights Commission ("KHRC") in which she made similar allegations. The KHRC complaint was still pending and remained unresolved at the time plaintiff filed this lawsuit on August 2, 1993. In plaintiff's response to the summary judgment motion, she asserts she is now waiting for the KHRC to deny reconsideration of her application.

On November 29, 1993, defendant made, pursuant to Federal Rule of Civil Procedure 68, Offers of Judgment on Count II (FLSA) in the amount of $7,000.00, and on Count IV (Title VII/Equal Pay Act) in the amount of $1,000.00. Plaintiff accepted these Offers of Judgment by letter dated December 9, 1993. The two Offers of Judgment, along with plaintiff's acceptance, were filed with the

---

1. During the period of her employment at Polsinelli, plaintiff's last name was Ludecke.

court on December 13, 1993. Additionally, on November 30, 1993, plaintiff formally agreed, during her deposition, to dismiss Counts VII and VIII without prejudice, and does not now attempt to resurrect those Counts. Consequently, the only claims now pending before the court are: Count I for retaliatory discharge under the FLSA, Count III under the Kansas Wage Payment Act, Count V under the KAAD, and Count VI for negligent supervision.

### III. *Discussion.*

Defendant moves for summary judgment on several grounds. First, defendant maintains that summary judgment is appropriate as to all pending counts because the release plaintiff signed discharges defendant from all claims. Additionally, defendant contends that Counts V and VI are deficient as a matter of law, regardless of the release.

### A. *The Release.*

The release plaintiff executed recites in pertinent part as follows:

The lump sum. payment is accepted by Employee in lieu of any and all other salary, back pay, sick leave pay, vacation pay, bonus pay, overtime pay, *and** severance pay, ~~compensation of any sort or damages~~.** Employee accordingly waives, abandons and releases all claims for additional pay including salary, back pay, sick leave pay, vacation pay, bonus pay, overtime pay, severance pay, compensation of any sort or damages.

Further, Employee acknowledges that she has been paid in full all compensation owed or allegedly owed, including salary, back pay, sick leave pay, vacation pay, bonus pay, overtime pay, severance pay, compensation of any sort or damages.

---

\* The parties added the word "and" to the original language of the release, and initialed the change.

\*\* Plaintiff crossed out this language of the original release, and initialed the change.

Defendant notes that under the law, plaintiff's intent is to be gleaned from the release itself where the instrument expresses that intent. *Reynard v. Bradshaw,* 196 Kan. 97, 409 P.2d 1011 (1966). Defendant contends

that because the release plaintiff signed specifically "releases all claims for additional pay, ... compensation of any sort or damages," and because the only relief plaintiff seeks in her lawsuit is wages, compensation, and damages, defendant is fully released from all claims plaintiff has asserted in her lawsuit.

In response, plaintiff contends that the release does not bar her claims against defendant. She advances several theories in support of this contention. First, she argues that there was no release because there was no "meeting of the minds" and no consideration; second, she claims the release is ineffective because it was procured by fraud and in bad faith; and third, she asserts that with respect to Count I, employees may not privately release FLSA retaliatory discharge claims.

■ Plaintiff asserts that there was no "meeting of the minds" because she had disagreed with several provisions of the release, had tried to cross them out, had expressed to defendant that she did not want to release her right to bring an action for damages in the future, and that the portion that she had crossed out "clearly evidences her intent not to release her claims." Indeed, the thrust of plaintiff's argument here is that she had merely intended to sign a "receipt" for payment of overtime and salary due her, not a "release," and therefore the release should not be enforced.

Defendant correctly observes that plaintiff's after-the-fact characterization of her intent is not relevant to the issue at hand, and that the intent of the parties on this issue is to be construed from the release itself. The dispositive issue here is whether the language of the release discharges defendant with respect to the claims in plaintiff complaint. Although plaintiff may have felt uncomfortable with the specific language contained in the release, she was given the opportunity to redact portions of the release, and indeed did cross out some language. In the first sentence of the above-quoted portion of the release, plaintiff accepted a lump sum payment in lieu of any and all other salary and pay, but plaintiff specifically crossed out

the language that she accepted the payment in lieu of compensation of any sort or damages. In the next sentence, plaintiff waived, abandoned, and released all claims for additional pay, including claims for compensation of any sort or damages. The fact that she explicitly crossed out "compensation of any sort or damages" in one portion of the document but did not choose to likewise omit this language in the waiver clause gives rise to the inference that she intended to leave this language in the release. However, the court need not speculate as to plaintiff's intent; her intent is expressed in the instrument itself, and pursuant to the express language of the release, plaintiff has waived all claims for additional pay, compensation of any sort, or damages.

In *White v. General Motors Corp.,* 699 F.Supp. 1485, 1487 (D.Kan.1988), *aff'd,* 908 F.2d 669 (1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991), the plaintiffs alleged that their employer gave them the choice either to accept a severance package and sign a release, or be discharged without any pay whatsoever. The court stated:

> "Plaintiffs here did not have to sign the releases; they could have chosen to allow GM to fire them without severance pay, and then pursued GM in court for wrongful discharge and/or breach of implied contract. They did not select this alternative.... While a court may not agree that plaintiffs chose the wisest or fairest course, it was plaintiffs' choice to make."

Plaintiff in this case had the same ability to choose between her options as did the plaintiffs in *White.* Plaintiff admits she had the free will to make the choice, and she chose to sign the release because she needed the money: "I felt like—I'm sure if I wanted to walk out of there and throw the checks on the table and say, I won't sign your release, you know, I'm going to file a claim against you at the labor board, I could have done that, yes." Plaintiff was further free to consult an attorney if she desired: "I wasn't being held at gunpoint. But I felt like I was in a position, to get those checks, I was going to have to sign that document."

Moreover, the fact that plaintiff may have mistakenly believed she was signing a simple "receipt" and not a "release" does not invalidate the terms of the release. It has long been the law in Kansas that "[a] mere mistake of fact on the part of one of the parties to a release, in the absence of a showing of fraud, duress, undue influence, or mental incapacity, is not sufficient ground for the avoidance of a release." *McMillin v. Farmers & Bankers Life Ins. Co.,* 167 Kan. 502, 507, 206 P.2d 1061, 1065 (1949). A party who signs a written contract is bound by its provisions regardless of failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake. *Albers v. Nelson,* 248 Kan. 575, 809 P.2d 1194 (1991). Plaintiff does not contend that she was subjected to duress, undue influence, or was mentally incapacitated at the time she signed the release. Nor has plaintiff made any allegations that would satisfy the strict pleading requirements for fraud, *see* Fed.R.Civ.P. 9(b), or shown facts sufficient for a reasonable jury to return a verdict for fraud by clear and convincing evidence. *Andrews v. Jones Truck Lines,* 741 F.Supp. 867 (D.Kan.1990).

Even viewing the facts in the light most favorable to plaintiff, plaintiff testified the document she signed contained the word "release" in the title. She also testified that in her work as a litigation paralegal, she has dealt with many releases, probably over one-hundred, and knows they have legal significance. She testified that she understands a document is a release if it says "release" in the title, and admits that she knew the document at issue was titled "release" before she signed the document. Plaintiff further testified that she was upset when she was handed the document "because it said release."

Plaintiff next argues that the release was not supported by consideration. However, as a matter of law, absent evidence of fraud or duress, a court shall not inquire into the adequacy of the consideration given. *White v. General Motors Corp.,* 699 F.Supp. 1485, 1488 (D.Kan.1988), *aff'd,* 908 F.2d 669 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991) (citing *International Motor Rebuilding Co. v. Unit-*

ed Motor Exchange, Inc., 193 Kan. 497, 501, 393 P.2d 992, 996 (1964)). Once again, plaintiff does not allege that she signed the release under duress, and plaintiff has failed to show the court any facts which, if proven, would support a claim of fraud. Thus, plaintiff's lack of consideration argument is rejected.

Plaintiff next maintains that the release is ineffective because it was procured by fraud or in bad faith. As authority for this proposition, plaintiff purports to rely upon *Fieser v. Stinnett*, 212 Kan. 26, 509 P.2d 1156 (1973).

As defendant points out, plaintiff fails to state with any particularity what facts might support a claim for fraud. Viewing the facts in the light most favorable to plaintiff, and mindful that the party claiming fraud must prove it by evidence that is clear and convincing, *Andrews v. Jones Truck Lines*, 741 F.Supp. 867 (D.Kan.1990), plaintiff has failed to set forth specific facts sufficient for a reasonable jury to conclude that the release was procured through fraud.

■ Additionally, *Fieser* does not stand for the proposition that a release may be invalidated through evidence of bad faith. In *Fieser*, plaintiff sustained injuries in an auto accident. Ten days after the accident, plaintiff signed a release with defendant's insurance company. The release discharged defendant from "any and all claims, ... causes of action or suits ... on account of all injuries, known and unknown, ... which have resulted or may in the future develop from [the] accident." Later that year, plaintiff was advised that he had a ruptured disc and would require surgery. Plaintiff subsequently filed suit seeking damages for his injuries and for the negligence of the defendant. Defendant filed an answer, alleging plaintiff had compromised and settled his claim as reflected by the release. Plaintiff filed a reply in which he admitted execution of the release but alleged 1) that it was executed on mutual mistake of fact, insofar as both parties believed the plaintiff had only minor injuries, and 2) that the consideration was inadequate to support the release. The trial court held that the release was not given under any mutual mistake of fact which would invalidate the release as a matter of law, and the

release was given for good consideration. In affirming the district court, the Kansas Supreme Court held that the release was clear and unambiguous. *Fieser* did not invalidate the release for "bad faith." Indeed, *Fieser* reiterated the well known rule that a release may not be invalidated "in the absence of fraud, duress, undue influence, or mental incapacity." *Id.* 212 Kan. 26, 509 P.2d at 1157–60 (citing *Reynard v. Bradshaw*, 196 Kan. 97, 409 P.2d 1011 (1966); *McMillin v. Farmers & Bankers Life Ins. Co.*, 167 Kan. 502, 206 P.2d 1061 (1949)).

The court knows of no Kansas cases which have held that "bad faith" is an independent ground upon which a party can rescind a release. As a matter of law, plaintiff's allegation of "bad faith" could not invalidate the release.

■ Next, plaintiff contends the release is invalid because an employee may not privately settle or release a FLSA retaliatory discharge claim, but rather a valid settlement or release may be obtained only through the Department of Labor. Defendant responds that with respect to the release of a retaliatory discharge claim, there is no statutory requirement that the Department of Labor supervise the settlement or release because the supervision statute, 29 U.S.C. § 216(c), does not include retaliation claims under section 215(a)(3).

29 U.S.C. § 215(a)(3) provides, in pertinent part:

> (a) After the expiration of one hundred and twenty days from the date of enactment of this Act [enacted June 25, 1938], it shall be unlawful for any person—

> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act ...

29 U.S.C. § 216(b) provides, in pertinent part:

> (b) Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. § 206 [minimum wages] or 207 [maximum hours]] shall be liable to the employee or employees affected in the

amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act [29 U.S.C. § 215(a)(3)] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 U.S.C. § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages....

29 U.S.C. § 216(c) provides, in pertinent part:

(c) The Secretary [of Labor] is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 6 or 7 of this Act [29 U.S.C. § 206 or 207], and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages....

With respect to the release of a retaliatory discharge claim based on an alleged violation of 29 U.S.C. § 215(a)(3), the plain language of 29 U.S.C. § 216(c) reveals no requirement that the Department of Labor supervise or approve any settlement or release. Thus, the plain language of the statute compels the conclusion that retaliation claims, like the one asserted in this case, may be released without Department of Labor supervision or approval. This common sense reading of section 216(c) is consistent with familiar principles of statutory construction. Courts have long held that where Congress includes particular language in one section of a statute but omits it in another section of the same statute, it is presumed that Congress intended to exclude the language, and the language will not be implied where it has been excluded. *See Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300–01, 78 L.Ed.2d 17 (1983); *West Coast Truck Lines v. Arcata*

*Community Recycling Center, Inc.,* 846 F.2d 1239, 1244 (9th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

Thus, Congress' omission of any reference to retaliatory discharge claims in the supervision statute, while specifically referring to other statutory claims, clearly implies that Congress did not intend for the supervision statute to apply to retaliation claims. Moreover, the law favors private resolution of disputes. Indeed, this reasoning is consistent with the private settlement of Title VII retaliatory discharge claims and Age Discrimination in Employment Act retaliatory discharge claims. Accordingly, plaintiff's claim that she could not privately settle and release her retaliatory discharge claim is without substance.

B. *Exhaustion of Administrative Remedies.*

■■■■ Before a plaintiff may litigate any KAAD claims in court, plaintiff must first receive an unfavorable determination from the KHRC, file for reconsideration of that unfavorable determination and then receive a denial of the reconsideration application. *See, e.g., Simmons v. Vliets Farmers Coop. Ass'n,* 19 Kan.App.2d 1, 861 P.2d 1345 (1993). Plaintiff concedes she is still awaiting the KHRC's denial of her application for reconsideration. The court finds that plaintiff has not complied with the exhaustion of remedy requirement as set forth in *Simmons,* and accordingly concludes that defendant is entitled to summary judgment with respect to plaintiff's KAAD claim on this additional basis.

C. *Negligent Supervision.*

■■■■ In Count VI, plaintiff alleges "the failure of defendant to properly supervise its employees who, in the course of [sic] scope of employment, who [sic] allowed the reductions and withholding of paychecks, the improper assessment and 'payment of overtime,' the unequal treatment of female and male paralegal work, the retaliatory termination of plaintiff, and poor references of plaintiff for employment by others constitutes *negligent supervision* of its employees." Complaint, ¶ 61 (emphasis added). Defendant contends

that Kansas law does not recognize the tort of negligent supervision in the factual context of this case. In support of this contention, defendant relies upon *Polson v. Davis*, 895 F.2d 705 (10th Cir.1990), and *Naab v. Inland Container Corp.*, 1994 WL 70268 (D.Kan. Feb. 28, 1994).

In *Polson*, the district court granted summary judgment on plaintiff's claim of negligent supervision on the grounds that this cause of action does not exist in Kansas. *Polson*, 635 F.Supp. 1130, 1151 (D.Kan.1986). In affirming this decision, the Tenth Circuit first stressed that no Kansas cases recognized such a claim. It also noted that a claim for negligent supervision had recently been rejected in Nebraska. *Polson*, 895 F.2d at 710 (citing *Alford v. Life Savers, Inc.*, 210 Neb. 441, 315 N.W.2d 260 (1982)). The court concluded that recognition of the principle of negligent supervision in an employment context would contravene Kansas' long standing employment-at-will doctrine:

> We also observe that this cause of action, once recognized, would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications.

> This inventive cause of action appears to be nothing more than an attempt to circumvent the strictures of the employment-at-will doctrine by implying a duty that exposes higher level supervisors to liability for actions for which her immediate supervisors are not liable.

*Id.*

Plaintiff contends that after *Polson*, the Kansas Supreme Court has implicitly recognized the cause of action of negligent supervision in *Kansas State Bank & Trust Co. v. Specialized Transp. Services, Inc.*, 249 Kan. 348, 819 P.2d 587 (1991). She relies on *Anspach v. Tomkins Industries*, 817 F.Supp. 1499 (D.Kan.1993), where the court noted that in *Kansas State Bank*, the Kansas Supreme Court had stated: "When a third party asserts a negligent retention and supervision claim against an employer, ..." The court in *Anspach* observed that this statement

is the first reference in any Kansas appellate opinion to suggest that a cause of action for negligent supervision might exist in Kansas. Prior opinions, including those cited in *Kansas State Bank* on the issue of employer liability, did not involve claims of negligent supervision, but addressed claims of negligent hiring and retention. The Kansas Supreme Court did not provide any analysis or authority to support its apparent recognition of this cause of action, nor did the court provide any indication as to what might be the elements of such a claim. However, the court's recognition of the cause of action is implicit in the language of the *Kansas State Bank* opinion, and therefore serious doubt has been cast on the continued validity of *Polson's* statement that a cause of action for negligent supervision does not exist in Kansas.

817 F.Supp. at 1519–20 (citations omitted).

The argument now raised by plaintiff was recently addressed and rejected in *Naab*, 1994 WL 70268 (D.Kan.1994). There, the court quoted the language in *Anspach* quoted above, and noted that *Anspach* did not resolve the conflict between *Polson* and *Kansas State Bank* because it found as a matter of law that the actions of the plaintiff's supervisor were not within the supervisor's scope of employment, and thus were not the types of actions for which a claim for negligent supervision could be advanced. *Naab*, 1994 WL 70268, *4–5. *Naab* then held:

> The validity of the current claim for negligent supervision is doubtful. While, as the *Anspach* court noted, the Kansas Supreme Court has now given some support for the idea that such a claim may exist in Kansas, in all probability such a cause of action would not be extended to the type of claim advanced here.... The language used by the supreme court in *Kansas State Bank*, after all, refers to the situation in which "a *third party* asserts a negligent retention and supervision claim against an employer." (Emphasis added). The court did not recognize such a claim in the context of a suit by a former employee who is suing for wrongful discharge.

There is no case supporting such a claim of negligent supervision in the context of employment termination.... On the other hand, there are a number of cases, joining the Tenth circuit in *Polson,* and the Nebraska Supreme Court in *Alford,* which have explicitly rejected the use of negligent supervision claims in cases where an employee has been subject to simple termination. *Midwest Knitting Mills v. United States,* 741 F.Supp. 1345 (E.D.Wisc.1990), 950 F.2d 1295 (7th Cir.1991); *Chesapeake & Potomac Telephone Co. v. Dowdy,* 235 Va. 55, 365 S.E.2d 751 (1988).

The court concludes that in the context of an employee who is suing his employer, the Kansas courts would agree with the view expressed in *Polson* that such an action, if permitted by an employee, would circumvent and undermine the employment at will doctrine.

*Id.,* 1994 WL 70268 at *5.

We agree with the reasoning expressed in *Naab.* Accordingly, we will grant defendant's motion for summary judgment on Count VI of plaintiff's complaint on this additional ground.

IT IS THEREFORE ORDERED that defendant's Motion for Summary Judgment (Doc. # 42) is granted as to all of plaintiff's remaining counts (Counts I, III, V and VI). Counts VII and VIII are dismissed pursuant to plaintiff's on-the-record stipulation.